## VOELKER v. CHICAGO, M. & ST. P. RY. CO.

(Circuit Court, N. D. Iowa, E. D.   June 16, 1902.)

1. INJURY TO EMPLOYE—NEGLIGENCE—PLEADING—DEFECTIVE CAR COUPLER.

   Two acts of negligence as causes of the accident, one being the use of a car on which the coupler was in such condition that it would not work properly and couple by impact, are charged by a petition which at length describes the faulty condition of the coupler, avers that its condition was due to defendant's negligence, and made it necessary for plaintiff's intestate to go between the cars, and that, while there, other cars were negligently kicked against the cars to be coupled, causing him to be crushed.

2. SAME—STATUTES—PLEADING.

   That the statute may avail plaintiff, it is not necessary or permissible that the petition in an action for injury from a defective car coupling cite or refer to Act Cong. March 2, 1893, relative to couplings on cars used by carriers in interstate commerce.

3. SAME—RIGHT TO BENEFITS.

   Though an employé, in an action for injury from defective car coupling, does not, by his argument or otherwise, indicate that he is relying on Act Cong. March 2, 1893, relative to couplings on cars of carriers engaged in interstate commerce, the court may and should instruct as to his rights thereunder.

4. NEW TRIAL—SURPRISE.

   Though defendant was taken by surprise by the court's calling the attention of the jury to a statute, this is not ground for new trial, it having made no request when the court, at the end of the charge, inquired whether there was any point or matter as to which instruction was desired, and it not being shown or claimed that defendant has evidence which will change the facts on which the court held the statute was to be considered.

5. SAME.

   Defendant having known the condition of a car coupler was an issue of fact in the case; and the question of its actual condition having been thoroughly gone into, and evidence having been introduced by both parties, it cannot have a new trial on the theory that, if it had foreseen

the court was going to cite a statute on the question of the legal obligation resting on it as to couplers, it might perhaps have had further evidence on the question of fact.

**6. INSTRUCTIONS—PLEADING AND EVIDENCE.**

Though a petition in action for injury from a defective car coupling does not allege that the car was used in connection with interstate commerce, the fact appearing in the evidence, the court may instruct that Act Cong. March 2, 1893, is applicable.

**7. MASTER AND SERVANT—CAR COUPLERS.**

Act Cong. March 2, 1893, requiring cars used in moving interstate commerce to be equipped with couplers coupling automatically, applies to a car designed for interstate traffic, though at the time being hauled empty.

**8. SAME—PROXIMATE CAUSE—CONCURRENT CAUSES.**

Failure to equip a car with a coupler coupling automatically, by reason of which a car coupler was obliged to go between the cars, where he was crushed, is a proximate cause of the accident, though the cars were forced together by the negligent kicking of other cars against them.

**9. SAME—CAR COUPLERS.**

A carrier, by permitting couplers, originally sufficient, to become worn out and inoperative, is within the prohibition of Act Cong. March 2, 1893, against using cars in interstate commerce not equipped with couplers coupling automatically.

**10. SAME—ASSUMPTION OF RISK—INSTRUCTION.**

It must be shown that an employé, claimed to have assumed the risk of the manner in which work was done, knew, or had means of knowing, how it was done; and an instruction that, if it was the custom to do the work as it was done when he was injured, he assumed the risk, is properly refused, no reference being made to knowledge or means of knowledge.

**11. SAME—CUSTOM—APPLICABILITY.**

The question of the custom of kicking back cars, under ordinary circumstances, without notice, is immaterial, but that of ordinary care under an exceptional situation is presented where the first cars kicked down did not, by reason of a defective automatic coupler, couple to the standing car, but separated from it a few feet, and deceased went between them to manipulate the coupler, and other cars were kicked back, crushing him; and it was claimed that the circumstances were sufficient to show the other members of the switching crew that the first coupling had not been made, and that he had gone between the cars.

**12. DEATH—EXCESSIVE DAMAGES.**

Verdict for $9,000 for death of a man 29 years old, with a life expectancy of 35 years, he being sober, industrious, and of good habits, and earning from $75 to $78 per month, is not so excessive as to justify reduction.

**13. PLEADINGS—AMENDMENT—VARIANCE.**

Under Code Iowa, § 3597, making variance immaterial where the adverse party was not actually misled to his prejudice, and providing for amendment only where such party was so misled, plaintiff need not file an amendment to petition, because of variance, where defendant is estopped to say that it was misled thereby.

Submitted on Motion for New Trial Filed on Behalf of the Defendant.

McCarthy, Kenline & Roedell, for plaintiff.
W. J. Knight, for defendant.

SHIRAS, District Judge. This case came up for trial at a former day of the term before a jury, and it then appeared that the plaintiff was the administratrix of the estate of Emil Voelker, and in that capacity had brought this action against the defendant railway company to recover damages for the death of Emil Voelker, which had

been caused by his being caught between two cars in the yards of the defendant company at Dubuque, Iowa, on the 9th of September, 1901, while he was in the employ of the company as a switchman. The evidence showed without contradiction that the defendant company, on the 8th day of September, brought a loaded freight car from Spalding, Ill., through Savanna, Ill., to Dubuque, Iowa, the train of which the car formed part reaching the yards at Dubuque about 4 o'clock in the afternoon; and on the next morning the switching crew to which Emil Voelker belonged went to work in the yards, under charge and direction of Mr. Allgeyer as foreman. The car in question was then on what is called the "East Freight Track," and the switching crew undertook the work of sending down upon this track and coupling to the standing car other cars brought from the main line, which were taken by the locomotive easterly upon the main line beyond the switch connecting the east freight track therewith, and then, by a backward movement of the engine, the cars were kicked down on the east freight track. By the direction of the foreman, Voelker rode down upon the first set of cars thus kicked back for the purpose of coupling them to the standing car, and while engaged in endeavoring to fix the coupler upon the standing car so that it would couple with the other cars he was crushed between the cars, receiving injuries which resulted in his death. The evidence proved clearly that the coupler on the standing car was out of order to such an extent that it would not couple automatically or by impact with the other cars, and the evidence justified the finding that when Voelker discovered that the coupler was out of order he immediately undertook to fix it so the coupling might be made, and while so engaged he was caught between the cars, and received the injuries causing his death. Upon the trial of the case the jury returned a verdict in favor of the plaintiff, the damages awarded being $9,000, and the defendant now moves for a new trial on various grounds.

In the charge of the court the jury were instructed that, if the evidence proved that the car in question was brought by the defendant company from a point or station in Illinois to Dubuque, Iowa, then the company, in handling the same, was engaged in interstate traffic, and was subject to the provisions of the act of congress approved March 2, 1893, and entitled "An act to promote the safety of employés and travelers upon railroads, by compelling common carriers engaged in interstate commerce to equip their cars with automatic couplers and continuous brakes, and their locomotives with drive wheel brakes and for other purposes" (27 Stat. 531). In support of the motion for a new trial it is earnestly contended that neither in the allegations of the petition nor in putting in the evidence did plaintiff base the case on the provisions of the act of congress, and that the defendant was wholly taken by surprise by the action of the court in instructing the jury with respect to the duties imposed upon the company, as a common carrier engaged in interstate traffic, by the provisions of this act. The general rule invoked by the defendant that a plaintiff, to recover, must bring his proof within the allegations of his petition or declaration, is not questioned; but the real inquiry is whether there was such a departure between the case

declared on in the petition and the case made by the evidence that the latter will not fairly support the former. Turning to the petition, we find it therein stated:

"That on September 9, 1901, there was, among others, upon said track, a loaded car, which was to form a part of a train then being made up by defendant's switching crew for early movement, under the orders and directions of defendant's yard master and foreman of said switching crew; that, unknown to plaintiff's intestate, Emil Voelker, who then was employed as car coupler and field man of said switching crew, defendant negligently permitted the coupler on the northerly end of said car to become and remain inoperative and defective in that the link connecting the lever and the pin was loose, broken, and disconnected, so that the pin and coupler could not be operated by means of the lever, and the said coupler was so old, worn, and rickety that the pin could not be raised because of the tumbler pressing and resting against the frame of the coupler, thus making it necessary, in order to operate the coupler, to go between the cars, insert the hand in the coupler, push the tumbler away from the frame, and then raise the tumbler and pull the knuckle open; * * * that by reason of the inoperative and defective condition of the coupler aforesaid said Emil Voelker was unable to make the coupling, and, the knuckles on both couplers being closed, no coupling was made when the cars bumped together, and the cars separated a few feet on account of the jar; that thereupon, as was his duty, and the usual practice, said Emil Voelker went between the cars to open the knuckle, in order that the coupling might be made by impact, and while thus engaged, and unaware of the danger to which he was exposed, said switching crew, while acting within the scope of their employment, and knowing that said Emil Voelker went between said cars to couple the same, negligently caused two or more other cars to be kicked with great force onto said east freight track and against the cars between which said Emil Voelker was thus occupied, thereby causing said Emil Voelker, without any fault on his part, to be crushed to his death between the drawbars on said cars; that defendant and its said employés, without fault of said Emil Voelker, negligently and carelessly moved said cars as aforesaid, while he was thus engaged, without signal from him, although the general practice then and long prior thereto required that said cars be not moved while he was thus occupied between the cars without signal from him, and he believed that said practice would be followed while he was so engaged in the performance of his employment; that defendant knew, or by the exercise of ordinary diligence could and should have known, of the defective and inoperative condition of the coupler aforesaid before the death of said Voelker, and in time to have remedied the same."

It is claimed on behalf of the defendant that the facts thus recited in the petition were intended to charge only one act of negligence, to wit, kicking back the cars without giving any notice or warning, when it was known to the other employés that Voelker was between the cars, and therefore in a place of danger. The merest cursory reading of the petition shows that such could not have been the thought of the pleader in preparing this petition. Had it been the purpose to make only one charge of negligence, based upon the manner in which the second set of cars were kicked back, it would only have been necessary to aver that Voelker, while engaged in the line of his duty in preparing the coupler upon the standing car, was called upon to place himself on the track at the end of the car, and was thus caught by the other cars; but, instead of limiting the averment of facts to this statement in substance, the pleader at considerable length describes the faulty condition of the coupler, avers that its condition was due to the negligence of the company,

and that its faulty condition was what caused Voelker to place him-self in a position where he was liable to be caught if the other cars were moved down in order to make a coupling. Properly construed, the petition charges two acts of negligence as the causes of the ac-cident, not taking into consideration the charge of negligence in the use of a road engine for switching work; and certainly the allega-tions of the petition were sufficient to give notice to the defendant that it was charged with negligence in that it was using a car upon which the coupler was in such condition that it would not work prop-erly, and would not couple by impact. Upon the trial both parties introduced evidence upon this matter of the condition of the coupler, and much time was taken up in the introduction of testimony upon this point, and there is, therefore, no sufficient foundation upon which to base the claim that the defendant was not duly warned of the fact that the condition of the coupler was an issue in the case as one of the grounds upon which it was charged with negligence.

It is said, however, that the defendant was taken unduly by sur-prise, in that the court, in the charge of the jury, cited the provisions of the act of congress of March 2, 1893, as applicable to the case, it being claimed that neither in the pleadings nor in the argument of counsel for plaintiff was any reference made to the act of congress. As matter of pleading, it certainly cannot be said that, in order to base a right of recovery on the provisions of the statute, it was nec-essary to cite the statute or its provisions in the petition. The pe-tition in set words charged the defendant with negligence in having and operating a car upon which was a defective, worn-out, and in-operative coupler, which would not couple by impact. Charging the defendant with negligence was charging that the company had not met or fulfilled the duty imposed upon it by law with respect to hav-ing and keeping the coupler upon the car in proper condition for use. It was not necessary, nor, indeed, permissible, under the rules of pleading, that the petition should set forth the law which had been violated. It is not for one moment supposable that the officers of the defendant company, or the learned counsel representing it in this case, are not, and were not when this action was commenced, fully aware of the provisions of the act of congress of March 2, 1893, and of the acts of the general assembly of the state of Iowa which now form sections 2079 to 2083, both inclusive, of the Code of the state, and therefore knew that as to cars used in interstate traffic the obligations of the act of congress were in force, and as to cars used within the state of Iowa the named sections of the Code were applicable. Therefore, when the petition charged the defendant with negligence with respect to the coupler upon the car, the defend-ant must have known that, as the car was used in interstate traffic, the act of congress would necessarily come into consideration in defining the obligations resting upon the defendant company. It is true, as urged by counsel for the defendant, that in the argument of the case on behalf of plaintiff no reference was made to the act of congress. In fact, counsel did not discuss the law at all in their ar-gument. They addressed the jury only, and if it be true that the line of argument to the jury would indicate that counsel were relying

on common-law rules only, yet certainly that did not prevent the court from calling the attention of. the jury to the provisions of the act of congress, if properly construed it had a bearing on the case. No matter what the views of counsel are upon the law of the case as expressed in their arguments, it is the duty of the court to give to the jury the law applicable to the facts, as the court understands it. If the law as given to the jury is applicable to the facts before them, no error is committed. If the law, as given, is not applicable, that is error, and cause for reversal; but the applicability of the law given is not dependent on the views of the counsel as expressed or omitted to be expressed in their argument before the jury.

But admitting to the fullest extent the claim now advanced that the counsel for defendant were taken by surprise by the action of the court in calling to the attention of the jury the named act of congress, is this matter of surprise any sufficient reason for granting a new trial? At the close of the charge to the jury the court, following its usual custom, inquired of counsel whether there was any point or matter touching which counsel desired the jury to be instructed which was not covered by the charge as given. The opportunity was certainly given to the defendant, if it had been misled as to the issues in the case, to have then called the attention of the court thereto, and asked leave to introduce further evidence, if that was necessary, or to be heard upon the questions of law, which had not been presented in argument. No such requests were made, and the case went to the jury under the instructions as originally given. Furthermore, it is not now shown or claimed that the defendant has evidence at command which would change the facts upon which the court held that the act of congress was to be considered in determining the legal obligations resting upon the defendant. It is not claimed that upon a new trial it would be shown that the defendant company was not engaged in interstate traffic as a common carrier, or that the car with the defective coupler was not a loaded car, brought by the defendant from a station in Illinois into the state of Iowa. In the written brief submitted by the defendant in support of the motion for a new trial it is said:

"Had defendant known that it was to be contended that it had violated the act of congress, it could have prepared its case to meet such contention, and perhaps would have produced evidence to show that the act of congress had not been violated because of the then condition of the coupler on the car. At all events, it ought to have been given an opportunity to do so, if it could."

The question of the actual condition of the coupler was thoroughly gone into before the jury, and evidence was introduced by both parties on this issue. The defendant well knew that the condition of the coupler was an issue of fact in the case, and had full opportunity to introduce all the evidence at its command on this point, and it certainly is not entitled to a new trial upon the theory that, if it had been foreseen that the court was going to cite the act of congress upon the question of the legal obligation resting upon the defendant, it might, perhaps, have had further evidence on the issue of fact. The defendant well knew the significance in the case of the

question about the condition of the coupler, and undoubtedly brought forward all the evidence available to it on that question. Under such circumstances it cannot be supposed that the court would be justified in granting a new trial upon the bare statement that perhaps it might be shown that the condition of the coupler was not in violation of the act of congress.

It is next contended that it was error on part of the court to call the attention of the jury to the provisions of the act of congress, because it was not averred in the petition that the defendant had hauled or permitted to be used on its lines the car in question, or that it was hauled or used in connection with interstate traffic. When it became the duty of the court to instruct the jury upon the law, it clearly appeared in the evidence that the car in question, being loaded with coal, had been brought from Illinois into Iowa. It was left to the jury to find the fact, under the evidence, whether the car was brought by the defendant company from the one state into the other, the jury being instructed that, if they so found, then the defendant, in so transporting the car, was engaged in interstate traffic, and in such case the act of congress would be applicable to the case. Would it not have been error, under these circumstances, if the court had instructed the jury that the act of congress had no relation to the case before them. Is it not true that a railway company is engaged in interstate traffic, within the meaning of the act of congress, when it brings loaded cars from one state into another. But it is said that:

"It was a mistake to instruct that, if the jury believed the car was brought from Illinois to Iowa, then defendant, in transporting it, was engaged in interstate commerce. This, we submit, would be an assumption of the fact to be alleged and proved; i. e., that the car had been used in moving interstate commerce."

If by this contention it is meant to assert that, in order to come within the purview of the act, it must be shown that at the time of the accident the car was loaded with freight which had been brought from another state, the answer is that the evidence proved such to be the fact in this case. But, further, that is not the proper construction of the act. The statutes, state and federal, requiring railway companies to equip their cars with automatic couplers, were not enacted to protect the freight transported therein, but for the protection of the life and limb of the employés who were expected to handle these cars. The beneficent purpose of these statutes is defeated if the employés are required to handle cars not equipped as required by the statutes, without regard to the question whether the cars are loaded or not. Legislation on this matter of the use of automatic couplers was sought and obtained from congress, as well as from the state legislature; so that the companies would not be afforded a loophole for escape from liability on the theory that the agencies used in interstate commerce are without the control of the state legislation. When companies, like the defendant in this case, are engaged in interstate traffic, it is their duty, under the act of congress, not to use, in connection with such traffic, cars that are not equipped as required by that act. This duty of

proper equipment is obligatory upon the company before it uses the car in connection with interstate traffic, and it is not a duty which only arises when the car happens to be loaded with interstate freight. It frequently happens that the railway companies load cars with live stock or farm produce in the western states, and carry the same to the eastern markets, and then return these cars without a load; but it cannot be true that on the eastern trip the provisions of the act of congress would be binding upon the company, because the cars were loaded, but would not be binding upon the return trip, because the cars are empty. Whenever cars are designed for interstate traffic, the company owning or using them is bound to equip them as required by the act of congress; and when it is shown, as it was in this case, that a railway company is using the car for transportation purposes between two states, sufficient is shown to justify the court in ruling that the act of congress is applicable to the situation.

It is next assigned as ground for a new trial that "it was error to leave it to the jury to find that the condition of the coupler was a proximate cause of the injury," it being claimed that the allegations of the petition and the evidence show that the alleged negligent kicking of the cars was the proximate and sole culpable cause of the injury. As already stated, the petition sets forth the faulty and inoperative condition of the coupler as one of the grounds of negligence charged against the defendant, and the evidence made it one of the vital issues in the case; but it is argued that, even if, through the negligence of the company, the coupler was inoperative, and in bad condition, this condition of the coupler was not a proximate cause of the accident, because Voelker would not have been crushed if the other cars had not been kicked back, and therefore the latter act must be deemed to be the sole and proximate cause of the accident. If this line of reasoning is to be followed, it would result that the act of kicking the cars back could not be deemed to be a proximate cause of the accident, no matter how negligently they were handled, because the mere movement of the cars would not produce injury, unless some one got in the way thereof, and, as the accident would not have happened if Voelker had not gotten upon the track, therefore the proximate and sole cause of the accident was the act of Voelker in going upon the track, and therefore neither the negligence of the company in using a car upon which the coupler was out of order nor the negligent manner in which the cars were kicked back could be relied upon as creating a cause of action against the company. The statutory requirement with respect to equipping cars with automatic couplers was enacted in order to protect railway employés, as far as possible, from the risks incurred when engaged in coupling and uncoupling cars. If a railway uses in its business cars which do not conform to the statutory requirements, either because they never were equipped with automatic couplers, or because the company, through negligence, has permitted the couplers, originally sufficient, to become worn out and inoperative, then the company is certainly not performing the duty and obligation imposed upon it by the statute, and is clearly, therefore, chargeable with negligence in thus using an improperly

equipped car; and the company is bound to know that if it calls upon one of its employés to make a coupling with a coupler so defective and inoperative that it will not couple by impact, and that, to make the coupling, the employé must subject himself to all the risks and dangers that inhered in the old and dangerous link and pin method of coupling, it is subjecting such employé to the very risk and danger which it is the purpose of the statute to protect him against, so far as that is reasonably possible. Subjecting an employé to risk to life and limb by calling upon him to use appliances which have become defective and inoperative through the failure to use proper care on part of the master is certainly negligence, which will become actionable if injury results therefrom to the employé; and liability therefor cannot be avoided by the plea that, if the company was thus guilty of actionable negligence in this particular, it cannot be held responsible therefor, because it was guilty of another act of negligence which aided in causing the accident. This accident happened because Voelker, in the performance of his duty, was called upon to place his person in a position where he might be caught between the cars he was expected to couple together. He was required to place himself in this dangerous position because of the negligent failure of the company to have upon the car a coupler in proper and operative condition, and certainly this negligent failure to the company was a proximate cause of the accident.

It is also contended that the court erred in not giving two instructions asked by the defendant to the effect that, if it was the general and uniform custom in the yard to kick cars down to a "field man," so called, without giving him any notice or warning, and Voelker remained working in the yard while this custom was observed, then there could be no recovery for any injury done him because of the kicking of cars to him without giving him notice or warning that it was to be done. The instructions as asked are open to the criticism that no reference is made to the knowledge or means of knowledge on part of Voelker. When the claim is made that an employé has assumed the risk caused by the manner in which the business of the master is conducted, it must be shown that the employé knew, or had means of knowing, the manner in which the work was done, so that the inference may be fairly drawn that by continuing in the employ of the master, having knowledge, or its equivalent, of the risks to which he would be subjected, he intended to assume such risks. But, waiving this objection, the instructions as asked were not applicable to the issue of negligence charged in the petition, and which there was evidence to sustain. The defendant introduced evidence to the effect that it was expected that the field man would look out for himself, and that it was not the rule or custom to give him warning when cars were about to be kicked back in the direction of the field man; and doubtless this is true under ordinary circumstances. Thus, if the cars which Voelker rode down had coupled with the standing car, it might well be that other cars could have been safely sent back without giving him notice or warning, and he could readily have protected himself from danger caused thereby. But the fact was that the first cars sent down did not couple to the standing car, and the claim

of the plaintiff is that when the cars struck, and the coupling was not made, they separated some few feet, and then Voelker undertook to manipulate the coupler so it would couple, and while he was thus engaged, without any signal from him and without any notice to him, another set of cars were kicked back, resulting in again forcing the cars together and crushing Voelker between them. The claim of the plaintiff and the issue presented by the facts was that the circumstances were sufficient to show that the expected coupling had not been made, and that Voelker had disappeared from the sight of the other members of the switching crew, evidently because he had gone between the cars, and therefore it was the duty of the others not to throw back another set of cars until they had received a signal from Voelker showing that it could be done with safety. The case did not make material the question of what the custom or practice was with respect to kicking back cars under ordinary circumstances, but did present the question whether ordinary care had been exercised in view of the exceptional situation created by the use of a defective and inoperative coupler, which resulted in a failure to couple the cars by impact, and required Voelker to place himself in a position of danger.

It is finally urged that the amount of damages awarded is excessive, and is not sustained by the evidence. It was shown that the deceased was 29 years of age at the date of his death, and his expectancy of life was 35 years; that deceased was sober, industrious, and of good habits, and was earning from $75 to $78 per month. At the former figure he was earning $900 per year, which rate of earning, continued for 35 years, would make the aggregate sum of $31,-500. The jury awarded as damages the sum he would have earned in 10 years, and the court cannot say that this sum is excessive. It is a liberal allowance, but not so excessive as to justify the court in reducing the same.

Counsel for plaintiff has asked leave to file an amendment to the petition in case the court should hold that the allegations of the petition were lacking in any substantial particular, the application for leave to amend being based upon the provisions of section 3597 of the Code of Iowa, which enacts that:

"No variance between the allegations in a pleading and the proof is to be regarded as material, unless it has actually misled the adverse party to his prejudice in maintaining his action or defense upon the merits. Whenever it is alleged that a party has been so misled, that fact must be shown by proof to the satisfaction of the court, and such proof must also show in what respect he has been so misled, and thereupon the court may order the pleading to be amended upon such terms as may be just."

Amendments of this character may be allowed after verdict and judgment have been entered. Davis v. Railway Co., 83 Iowa, 744, 49 N. W. 77. Under the provisions of this section, in order to obtain a reversal of a judgment or a new trial on the ground of a variance between the allegations of a pleading and the proof, it must be proven to the satisfaction of the court that the party has been misled to his injury. Such proof has not been made in this case. As already set forth, if the defendant, when the charge was given to the

jury, had then claimed that there was a material variance between the allegations and the proof offered in the view taken thereof by the court, the situation could have been properly dealt with. The defendant did not then suggest that there was a variance between the allegations of the pleading and the evidence introduced, nor did the defendant suggest that it had been in any way misled with respect to the issues involved in the case, or that it was taken by surprise by the charge of the court with regard to the issues involved in the controversy. Under these circumstances the defendant cannot now be heard to say that it was misled by the action of the court, or by any variance between the allegations of the petition and the evidence introduced, and therefore there is no need for filing an amendment on behalf of the plaintiff.

The motion for new trial is overruled, and judgment will be entered on the verdict in favor of plaintiff.