The Philadelphia and Reading Railway Company, defendant below, plaintiff in error, *vs.* George E. Winkler, plaintiff below, defendant in error. .

*Writ of Error—Personal Injuries—Act of Congress—Constitution—Using Couplers Contrary to Act—Negligence per se—Evidence—Tender is a Car—Reversible Error—Evidence; to Submit to Jury, when.*

1.  It is an established rule that the Supreme Court will not reverse a judgment when it is clear that the errors assigned could not, and did not, prejudice the rights of the party against whom the ruling was made.

2.  It was not error in the Court below to decline to charge the jury that the Act of Congress, known as "The Safety Appliance Act," was in violation of the Constitution of the United States, and unconstitutional and void.

3.  The tender used for carrying fuel and water for a locomotive is a car within the meaning and purview of said act.

4.  It was proper for the Court below to instruct the jury that said Act of Congress was applicable to the case, if there was any evidence upon which the jury could properly proceed to find that at the time of the accident the tender and car in question were engaged in moving interstate traffic. And there was sufficient relevant testimony in the case to warrant the Court in submitting to the jury such question.

5.  The true intent and meaning of the act is not merely that the cars used in moving interstate traffic shall be equipped with automatic couplers of the description therein mentioned, but also that such couplers shall be in such condition as to be used automatically while such cars are so engaged. Therefore, if at the time of the accident the tender was equipped with automatic couplers, but so connected with a bull-nose coupler that the coupling with other cars was not made automatically by impact, but so that it made it necessary for men to go between the ends of the cars to couple and uncouple, then such coupling did not comply with the Act of Congress and was unlawful.

6.  If at the time of the accident the defendant company was using such a coupler, which was prohibited by the Act of Congress, it was guilty of negligence *per se*, and if the injuries complained of resulted from such unlawful use alone, the defendant would be liable. The law manifestly contemplates that the car shall be so equipped that the coupling shall actually be made automatically, and if not so equipped the plaintiff did not assume the risk arising therefrom, even though he

continued in the employment of the company after such unlawful use of the cars had come to his knowledge.

(*June 19, 1903.*)

NICHOLSON, CH., and SPRUANCE AND BOYCE, J. J., sitting.

*Andrew E. Sanborn* for plaintiff in error.

*William S. Hilles* for defendant in error.

Supreme Court, January Term, 1903.

WRIT OF ERROR to the Superior Court in and for New Castle County.

The action brought below was for damages for personal injuries to the plaintiff, claimed to have been sustained under the following circumstances, viz.: That on the nineteenth day of February, 1901, he was in the employ of the Philadelphia and Reading Railway Company, the defendant, as head brakeman of the shifting crew which was using shifting engine No. 1242 and its tender in moving and delivering interstate commerce cars at the siding on the south side of the City of Wilmington, the defendant then and there being a common carrier of passengers and freight; that while coupling the tender to the next car, using a "bull-nose" coupler, without fault on his part, his right hand was caught between the couplers, resulting in the loss of three fingers, and otherwise crushing and injuring his hand; that the "bull-nose" coupling on the tender was dangerous and unlawful; that he was inexperienced in the business of a brakeman, and was not warned or instructed by the defendant as to the risk thereof; that his injuries were caused by the defendant's negligence.

The defendant, on the other hand, claimed that the engine and tender were not engaged in moving interstate commerce at the time of the accident, but merely in moving local traffic; that the

"bull-nose" used on the tender at that time was necessary in order to safely move cars around sharp curves in the Diamond State Steel Co.'s yard, where the automatic couplers would not work, and was a reasonably safe and proper appliance for such purpose; that, moreover, the tender and cars were equipped with automatic couplers, as required by law; that the plaintiff sought work as a competent brakeman, and also actually received instructions as to the risks of his employment, which risks and dangers were also open and known to the plaintiff. That the latter's injuries were the result of his own carelessness.

It was conceded that the relation of master and servant existed between the plaintiff and the defendant at the time of the accident.

The points relied upon by plaintiff in error in the argument in the Supreme Court were as follows:

*First.* That the Court erred in submitting to the jury the question as to whether the Act of Congress passed March 2, 1893, requiring the use of automatic couplers on cars used in interstate commerce, applied to the facts proved in this case.

*Second.* That the Court below erred in allowing the following question to be answered:

Q. "Where did the cars come from that were hauled generally on that road by that engine and tender?"

And in not confining the question to the particular car or cars that were being shifted at the time of the accident.

*Third.* That Section 8 of the Act of Congress known as the "Safety Appliance Act," would, if applied to the facts proved by the evidence in this case, be in violation of the Constitution of the United States.

*Fourth.* That the Court erred in charging the jury " that the defendant would be engaged in moving interstate commerce even though the car to which the tender was coupled was not the car used in interstate traffic, if the removal of such car was a necessary step in getting at and moving said interstate car."

*Fifth.* That the Court erred in not charging the jury as requested, by the defendant, that, assuming that the Act of Congress applies to the case, the defendant was justified in making use of the " bull-nose" in connection with the automatic couplers, where, by reason of sharp curves in the Diamond State Steel Company's yard, the automatic couplers could not possibly be used without such, or a similar device.

*Sixth.* That the Court should have instructed the jury, as requested by the defendant, that if the plaintiff, voluntarily, knowingly, without objection and without special orders from the defendant, used the said " bull nose," which was easily detachable from the automatic coupling, at the time of the accident in a place where it was not necessary by reason of sharp curves in the track to use the same, he assumed whatever risk was thereby occasioned.

*Seventh.* That the Court erred in not charging the jury, as requested by the defendant, that if the plaintiff, knowing the " bull nose " was being used of necessity on the sharp curves in the yard of the Diamond State Steel Company, voluntarily made use of the same, without objection on his part and without being especially ordered to use it on the occasion of the accident, the defendant would be liable.

\*    \*    \*    \*    \*    \*    \*

*Ninth.* That the Court erred in not charging the jury, as requested by the defendant, that the alleged danger was patent and obvious.

*Tenth.* That the Court erred in not charging the jury, as requested by defendant, that if the master and servant had equal knowledge or equal means of knowledge of the risk and danger connected with the devices in use at the time of the accident the servant could not recover.

*Eleventh.* That the Court erred in not giving a binding instruction to the jury, as prayed for by the defendant, that the defendant was not guilty of negligence.

*Twelfth.* That the Court erred in not charging the jury, as requested by the defendant, that the plaintiff was guilty of contributory negligence.

*Thirteenth.* That the Court erred in not charging the jury, as requested by defendant, that plaintiff was injured in consequence of an ordinary risk incident to the service in which he was engaged, and could not therefore recover in this action.

BOYCE, J., delivering the opinion of the Court:

We have carefully examined and considered the several assignments of error, the record and the briefs of counsel in this case, in connection with the rulings of the Court below upon the admission and rejection of testimony, and likewise in connection with the charge of the Court to the jury ; and we do not find any reversible error in the trial below. It is an established rule in this Court that it will not reverse a judgment when it is clear that the errors assigned could not and did not prejudice the rights of the party against whom the ruling was made.

*Creswell vs. W. & N. R. R. Co., 2 Pennewill, 210.*

The Court below did not err in declining to charge that the Act of Congress, known as " The Safety Appliance Act," approved March 2, 1893, and amended April 1, 1896, is in violation of the

Constitution of the United States and unconstitutional and void; or that the statute did not apply to this case, because, as it is alleged, there was no evidence that the engine and tender of the defendant company were, at the time of the accident, engaged in moving cars then used in intestate traffic; and rightfully held that the *tender* used for carrying fuel and water for a locomotive is a *car* within the meaning and purview of the act. The statute provides as follows:

"Section 2. That on and after the 1st day of January, 1898, it shall be unlawful for any common carrier to haul or permit to be hauled or used on its lines any car used in moving interstate traffic not equipped with couplers coupling automatically by impact, and which can be uncoupled without the necessity of men going between the end of the cars."

"Section 8. That the employee of any such common carrier who may be injured by any locomotive, car or train in use contrary to the provisions of this Act, shall not be deemed thereby to have assumed the risk thereby occasioned, although continuing in the employment of such carrier after the unlawful use of such locomotive, car or train has been brought to his knowledge."

It was claimed by the plaintiff that, at the time of the accident, he was engaged in moving interstate traffic for the defendant company with an engine and tender, not equipped according to the statutory requirement. The burden of proof was upon him to show this.

The preliminary question for the Court below, as well as for this Court, is not whether there was literally no evidence, but whether there was any evidence upon which the jury could properly proceed to find that at the time of the accident the said tender and car were engaged in moving interstate traffic. (*Creswell vs. W. & N. R. R. Co., 2 Pennewill, 210.*) We think there was sufficient relevant testimony in this case to warrant the Court in submitting

to the jury for their determination the question whether the tender and car between which the plaintiff was injured, were, at the time of the accident, thus engaged; and the instruction by the Court to the jury to the effect that if they so found the Act of Congress would be applicable, was proper. The true intent and meaning of the statute is not merely that the cars, etc., used in moving interstate traffic, shall be equipped with automatic couplers of the description therein mentioned, but also that such couplers shall be in such condition as to be used automatically while such cars are so engaged.

In the case of *Voelker vs. Chicago M. and St. P. Ry. Co., 116 Fed. 867,* the Court said: "The statutory requirement with respect to equipping cars with automatic couplers was enacted in order to protect railway employees, as far as possible, from the risks incurred when engaged in coupling and uncoupling cars. If a railway uses in its business cars which do not conform to the statutory requirements, either because they never were equipped with automatic couplers, or because the company, through negligence, has permitted the couplers, originally sufficient, to become worn out and inoperative, then the company is certainly not performing the duty and obligation imposed upon it by the statute, and is clearly, therefore, chargeable with negligence in thus using an improperly equipped car." The true intent and meaning of the Act of Congress is not merely that cars, etc., used in moving interstate traffic shall be equipped with automatic couplers of the description therein mentioned, but also that such couplers should be in such condition as to be used automatically while such cars are so engaged.

Applying to this case the principle thus announced, we are of the opinion that the Court below correctly charged that "Should you find that the tender at the time of the accident was equipped with automatic couplers, but that it was so connected with the bull-nose coupler that the coupling with other cars was not made automatically by impact, but so equipped that it made it necessary for

men to go between the ends of the cars to couple and uncouple, then such coupling did not comply with the Act of Congress and was unlawful."

" If, at the time of the accident, the defendant was using such coupler, which was prohibited by the Act of Congress, it was guilty of negligence *per se ;* and if the injuries complained of resulted from such unlawful use alone, then the defendant would be liable. The law manifestly contemplates that the car shall be so equipped that the coupling shall actually be made automatically, and if not so equipped the plaintiff did not assume the risk arising therefrom, even though he continued in the employment of the company after such unlawful use of the cars had come to his knowledge."

We are of the opinion that the judgment of the Court below should be affirmed.

Judgment affirmed.