### BALTIMORE & O. R. CO. v. DARR.

(Circuit Court of Appeals, Fourth Circuit. February 5, 1913.)

#### No. 1,121.

COMMERCE (§ 27*)—EMPLOYER'S LIABILITY ACT—EMPLOYÉ EMPLOYED IN INTERSTATE COMMERCE.

When an engine and tender used by defendant railroad company in hauling interstate trains between two points reached the end of their run and had been placed on a fire track, as usual, to await the time for the return trip, which was but a few hours later, plaintiff, who was employed in making repairs, was sent to replace a bolt which had been lost from a brake shoe of the tender, rendering its use dangerous, and while so employed, without negligence on his part, was injured through the negligence of a fellow servant. Held, that such facts sustained a finding that defendant was engaged in interstate commerce, and that plaintiff was employed therein at the time of the injury, and that he was entitled to recover therefor under Employer's Liability Act April 22, 1908, c. 149, § 1, 35 Stat. 65 (U. S. Comp. St. Supp. 1911, p. 1322).

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 25; Dec. Dig. § 27.*]

In Error to the District Court of the United States for the District of Maryland, at Cumberland; John C. Rose, Judge.

Action at law by George H. Darr against the Baltimore & Ohio Railroad Company. Judgment for plaintiff, and defendant brings error. Affirmed.

For opinion below, see 197 Fed. 665.

This was an action at law, instituted in the District Court of the United States for the District of Maryland, by George H. Darr, as plaintiff, against

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the Baltimore & Ohio Railroad Company, a corporation, incorporated under the laws of the state of Maryland. For convenience the plaintiff in error will be referred to as the defendant, and the defendant in error, as the plaintiff. The declaration was filed on the 22d day of March, 1912. The defendant pleaded on April 8, 1912, and on May 15, 1912, it demurred to the declaration, which demurrer the court overruled. On May 15, 1912, the case was tried before a judge and jury, and the jury rendered a verdict in favor of the plaintiff in the sum of $1,000, together with the costs of the action. The defendant made the usual motions, which were overruled, and the case was brought here on writ of error.

There was evidence tending to show that George H. Darr was, at the time of his injury, engaged as an employé and servant of the defendant company in the city of Cumberland, Md., as a running repairman and emergency man, whose duty it was to repair the engines and tenders of said company; that on the date of his injury, to wit, the 12th day of December, 1911, engine No. 4,119, of the defendant company, and its tender, brought in a loaded freight train from Brunswick, Md., to Cumberland, Md., crossed into the state of West Virginia, and again into the state of Maryland, before arriving at Cumberland; that said engine and cars arrived in Cumberland about 9 o'clock on the morning of December 12, 1911, and it was found, upon examination, that its tender was in need of immediate repair to the left front brake. A hanger bolt had fallen out of the brake beam on the tender. As a result the brake beam hung down in dangerous proximity to the rail and was likely to cause an accident. The plaintiff and one Stephen M. Thomas were directed to repair the same. The engine was removed to a track, called the "fire track," on which temporary repairs were made, and the plaintiff went to work to repair the brake shoe and hanger bolt. It further appears that while engaged in repairing it, and without any negligence whatever on his part, his fellow servant in charge of the engine, turned on the air and plaintiff was seriously injured.

The plaintiff testified that engine No. 4,119 was a second division engine, belonging to the Baltimore & Ohio Railroad Company, running out of Maryland, into West Virginia, to Brunswick, Md.; that it hauled freight over the second division, and that he first saw the engine about 9 o'clock on the morning he was injured; that it was then standing on the fire track; that he was running repairman and emergency man, employed by the defendant company at its roundhouse, in South Cumberland, Md.

A witness by the name of A. W. Dean, foreman in the employ of the defendant company, at the time the plaintiff was injured, testified that he knew engine No. 4,119, and that it was a through engine engaged in hauling freight; that it came from Brunswick, Md., on the morning the plaintiff was injured; that it brought a freight train in that morning; and that when it went out again it went either to Brunswick or Martinsburg, W. Va. Dean further testified that the defendant company was at all times on the day of the injury to the plaintiff, and ever since, engaged in the business of interstate and intrastate carrier of passengers and freight for hire; its freight and passenger trains traveling several times a day to and from Cumberland to Brunswick, Md., through the state of West Virginia.

A witness by the name of Stephen M. Thomas testified that he assisted the plaintiff in repairing said engine at the time of his injury; that the engine came into the yard at 9:15 on the morning the plaintiff was injured, and went out on its run at 2 o'clock on the same afternoon.

William Moreland, boss caller for the defendant company, at Cumberland, was also examined as a witness. He testified that he was in the employ of the Baltimore & Ohio Railroad Company in its shops in South Cumberland, and was thus engaged on the morning the plaintiff was injured, and further testified that he knew engine No. 4,119, and that it was engaged at that time in handling freight between Cumberland and Brunswick, Md., Martinsburg and Keyser, W. Va.; that it comes into Cumberland and goes out regularly with freight.

George A. Pearre, of Cumberland, Md., for plaintiff in error.

Walter C. Capper, of Cumberland, Md. (Finley C. Hendrickson, of Cumberland, Md., on the brief), for defendant in error.

Before PRITCHARD, Circuit Judge, and WADDILL and McDOWELL, District Judges.

PRITCHARD, Circuit Judge (after stating the facts as above). This action was instituted in pursuance of Act April 22, 1908, c. 149, § 1, 35 Stat. 65 (U. S. Comp. St. Supp. 1911, p. 1322), which, among other things, provides:

"Every common carrier by railroad, *while engaging* in commerce between any of the several states, * * * shall be liable in damages to any person suffering injury *while he is employed by such carrier in such commerce* * * * for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employés of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment."

It is clear that it was the purpose of this act that every common carrier by railroad engaged in commerce between any of the several states should be liable in damages to any person suffering injury while employed in interstate commerce by such carrier for injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employés of such company, as well as employés injured by reason of any defect or insufficiency in its engines, cars, bolts, etc.

Therefore the only questions that it becomes necessary for us to determine are as to whether, first, the defendant company as a carrier was engaged in interstate commerce and if the plaintiff below was at the time of the injury employed in such commerce; second, as to whether the injury the plaintiff sustained was due to the negligence of any of the officers, agents, or employés of such carrier, but there seems to be no controversy as to the second proposition. Therefore this leaves for our consideration the sole question as to whether, at the time of the injury, the engine in question was employed or engaged in interstate commerce.

The evidence offered in the court below was to the effect that this particular engine was used by a common carrier while engaged in interstate commerce. Manifestly it was the intention of Congress that this act should apply to a particular class of employés and to a particular class of carriers, to wit, those carriers that were engaged in interstate commerce and those employed by such carriers for the purpose of aiding them in carrying on the business. The plaintiff belonged to this class of employés.

If this engine had been stopped en route, while attached to a loaded train, either in the state of Maryland or in the state of West Virginia, for making needed repairs, it could hardly have been insisted that during the time consumed in making such repairs the defendant company was not engaged as an interstate carrier. The engine was making its daily trips through Maryland and West Virginia, and while

204 F.—48

temporarily in the yards at Cumberland, Md., it became necessary to make certain repairs that were essential to the successful operation of the defendant company's trains. Therefore it necessarily follows that any work that was performed by the plaintiff was as much an incident of the business as if the accident had occurred while the train was on its regular trip either in Maryland or West Virginia. The learned judge who heard this case in the court below, among other things, made the following statement of facts:

"The engine was at the time of the accident habitually used in interstate commerce, and apparently, from the testimony, in no other kind of commerce. It was not withdrawn from service. * * * The engine came in from its interstate commerce run as usual, and apparently went out as usual. The repairs which the plaintiff was making to it were of the ordinary trivial kind, which must be, and habitually are, made from day to day, without in any wise interfering with the ordinary and profitable use of the equipment. At the time of the accident, I am persuaded, the locomotive and tender were instruments of interstate commerce, as those words are used by the Supreme Court."

The case of Johnson v. Southern Pacific Railroad Company, 196 U. S. 1, 25 Sup. Ct. 158, 49 L. Ed. 363, is very much in point. It appears that a dining car regularly used to furnish meals to passengers between San Francisco and Ogden was detached from the east-bound train at Promontory and left at that point to be picked up by the next west-bound train. Johnson sustained injuries while coupling it to an engine. In that case, as in this, it was insisted that for the time being the car was not engaged in interstate commerce. The court in that case said:

"Another ground on which the decision of the Circuit Court of Appeals rested remains to be noticed. That court-held by a majority that, as the dining car was empty and had not actually entered upon its trip, it was not used in moving interstate traffic, and hence was not within the act. The dining car had been constantly used for several years to furnish meals to passengers between San Francisco and Ogden, and for no other purpose. On the day of the accident the east-bound train was so late that it was found that the car could not reach Ogden in time to return on the next west-bound train according to intention, and it was therefore dropped off at Promontory to be picked up by that train as it came along that evening. The presumption is that it was stocked for the return, and as it was not a new car, or a car just from the repair shop, on its way to its field of labor, it was not 'an empty,' as that term is sometimes used. Besides, whether cars are empty or loaded, the danger to employés is practically the same, and we agree with the observation of Judge Shiras in Voelker v. Railway Co. (C. C.) 116 Fed. 867, that 'it cannot be true that on the eastern trip the provisions of the act of Congress would be binding upon the company, because the cars were loaded, but would not be binding upon the return trip, because the cars were empty.'

"Counsel urges that the character of the dining car at the time and place of the injury was local only, and could not be changed until the car was actually engaged in interstate movement or being put into a train for such use, and Coe v. Errol, 116 U. S. 517, 6 Sup. Ct. 475, 29 L. Ed. 715, is cited as supporting that contention. In Coe v. Errol it was held that certain logs cut in New Hampshire, and hauled to a river, in order that they might be transported to Maine, were subject to taxation in the former state before transportation had begun. The distinction between merchandise which may become an article of interstate commerce, or may not, and an instrument regularly used in moving interstate commerce, which has stopped temporarily

in making its trip between two points in different states, renders this and like cases inapplicable. Confessedly this dining car was under the control of Congress while in the act of making its interstate journey, and in our judgment it was equally so when waiting for the train to be made up for the next trip. It was being regularly used in the movement of interstate traffic and so within the law."

In the case of St. Louis & S. F. R. Co. v. Delk, 158 Fed. 931, 86 C. C. A. 95, 14 Ann. Cas. 233, the Circuit Court of Appeals for the Sixth Circuit held as a matter of law that the car in question was engaged in commerce, notwithstanding the fact that it was kept out of service at least a day before the repairs were even begun. From the facts of that case, it appears that there was no necessity for making immediate repair; but in the case at bar the engine was to be used immediately, and the work of repairing the brake beam began shortly after the engine and tender had been placed on the fire track. While it appears that the plaintiff on account of his injury was prevented from making the repair, another employé was called upon to finish the work, thus enabling the engine to leave at 2 o'clock in the afternoon of that day on its regular run. Why was it necessary that this engine be repaired promptly? Can any inference be drawn from the facts, other than that it was essential to the prosecution of the work in which the company was engaged? Of course, the cars drawn by this engine had to be carried on schedule time, and, the repairs being of such a character as could be made during the interval between the incoming and the outgoing of the train, the repairs were promptly made notwithstanding the accident, and the company was thus enabled to carry on its business as an interstate carrier without interruption.

The case of Lamphere v. Oregon Railroad & Navigation Co. et al. (C. C.) 193 Fed. 248, was cited by counsel for the defendant to sustain this phase of the case. On the 1st day of December, 1910, C. Roy Lamphere, a resident of Tekoah, Wash., was employed on the Oregon Railroad Company as a locomotive fireman. On the evening of that day he received orders from his superior officers to board the west-bound train at Tekoah as a part of the deadhead crew, to proceed thence westerly to a certain town, there to relieve an engine crew which had been constantly employed for more than 16 hours on an engine engaged in interstate commerce, and on the way from his home to the depot at Tekoah, for the purpose of taking the train as directed, he was crushed between two cars and received injuries from which he thereafter died. A demurrer was filed in that case, which was sustained upon the ground that the plaintiff was not, at the time he was injured, employed in interstate commerce within the meaning of the Employer's Liability Act. Later this case was carried to the Circuit Court of Appeals for the Ninth Circuit, where the lower court was reversed. That case is reported in 196 Fed. 336, 116 C. C. A. 156. The court, in referring to this case, among other things, said:

"The deceased when he was killed was not only on his way to work for his employer, but he was proceeding under the direct and peremptory command of the railroad company to do a designated specific act in the service of the company, to wit, to move a train then engaged in interstate commerce. He was on the premises of the railroad company and in the discharge of his duty when he met his death, and the train which struck him and caused his

death was engaged in interstate commerce, and belonged to the same railroad company. Must a fireman be actually in his place of duty on the locomotive of a train which is engaged in commerce between the states, in order that he may be said to be employed in interstate commerce? If he is commanded to step down from his train, and proceed across the track, and take his place on another train engaged in interstate commerce, and he is injured while on the way, will it be said that he was not employed in interstate commerce when he received the injury? The case supposed is substantially the case now before the court.   *   *   *

"Counsel for the defendant in error contend that the act applies only to employés of railroad companies who are at the time actually engaged in the movement of interstate commerce, and they deny that others, such as those who are employed in the shops of a railroad company, where its engines are repaired, or are repairing its tracks or roadbed, are employed in interstate commerce, and they cite the case of Pedersen v. Delaware, L. & W. R. R. (C. C.) 184 Fed. 737, in which it was held that, although the railroad company was engaged in both interstate and intrastate business at the time of the plaintiff's injury, he, being an employé engaged at that time in bridge construction on the track of the company, which was to be used for such commerce, was not engaged in interstate commerce. The decision in that case runs counter to the cases above cited, and we think it is also opposed to the doctrine of the recent decision of the Supreme Court in Mondou v. New York, N. H. & H. R. Co., 223 U. S. 1, 32 Sup. Ct. 169, 56 L. Ed. 327, 38 L. R. A. (N. S.) 44. The judgment in that case disposes of three cases involving the application of the Employer's Liability Act. In one of the cases, the judgment in which was affirmed, the action was brought and damages were recovered by a personal representative of a deceased employé of a railroad company. The complaint alleged that the injury occurred while the defendant as a common carrier was engaged in commerce between some of the states, and while the deceased, in the course of his employment by the defendant in such commerce, was engaged in replacing a drawbar on one of the defendant's cars then in use in such commerce. The statement of the facts is meager, but it would appear therefrom that the employé who was injured was not one of a train crew, but was a machinist or repairer, whose duty it was to replace drawbars, and that the work was done either in a yard or on a switch, for the injury resulted from the negligence of fellow servants in pushing other cars against the one on which the deceased was working. In the opinion in that case the court made certain observations concerning the act which we think pertinent to the case at bar.   *   *   *

"As indicated in the opinion, the test question in determining whether a personal injury to an employé of a railroad company is in the purview of the act is: What is its effect upon interstate commerce? Does it have the effect to hinder, delay, or interfere with such commerce? As applied to the present case, it is this: Was the relation of the employment of the deceased to interstate commerce such that the personal injury to him tended to delay or hinder the movement of a train engaged in interstate commerce? To that question we think there can be but one answer. Under the imperative command of his employer, the deceased was on his way to relieve, in the capacity of a fireman, the crew of a train which was carrying interstate commerce, and the effect of his death was to hinder and delay the movement of the train. In our opinion, the complaint states a cause of action under the Employer's Liability Act."

The learned judge who heard this case in the court below submitted issues to the jury, one of which raised the question as to whether the defendant was engaged as a common carrier in interstate commerce, and also as to whether the plaintiff was injured while employed in interstate commerce, and the issues thus raised were found in favor of the plaintiff. In view of the evidence to which we have referred, we are of the opinion that the circumstances surrounding this case are

such as to bring it within the purview of the statute, and, therefore, that the plaintiff is entitled to recover for the injuries sustained. We have examined the cases relied upon by counsel for the defendant, but are of the opinion that they do not apply to the case at bar. A careful consideration of the rulings of the lower court, as respects the questions raised by the assignments of error, impels us to the conclusion that the same are without merit. For the reasons stated, the judgment of the lower court is affirmed.

Affirmed.