JOHNSON v. GREAT NORTHERN RY. CO.†

(Circuit Court of Appeals, Eighth Circuit. March 14, 1910.)

No. 3,144.

1. RAILROADS (§ 229*)—REGULATION OF INTERSTATE ROADS—SAFETY APPLIANCE ACT.

The safety appliance act (Act March 2, 1893, c. 196, § 2, 27 Stat. 531 [U. S. Comp. St. 1901, p. 3174]) imposes upon a railroad company engaged in interstate commerce the absolute duty of seeing that all cars used in such commerce that are moved by it are, when so moved, equipped with a coupling device in such condition that it will couple automatically by impact, and so constructed that it can be uncoupled from an adjoining

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes
† Rehearing denied April 27, 1910.

car without the necessity of the person uncoupling going between the cars.

[Ed. Note.—For other cases, see Railroads, Dec. Dig. § 229.*]

**2. COMMERCE (§ 27*)—SAFETY APPLIANCE ACT—CARS USED IN INTERSTATE COMMERCE.**

A foreign freight car, moved by one railroad company from one state into another, loaded, and there delivered to defendant company, and by defendant to the consignee, and after being unloaded ,placed by defendant on a switch track, from which it was afterwards redelivered to the original company, again loaded by it, and returned into the state whence it came, was, when on defendant's switch track awaiting redelivery, a car in use in interstate commerce, and subject to the requirement of the safety appliance act (Act March 2, 1893, c. 196, § 2, 27 Stat. 531 [U. S. Comp. St. 1901, p. 3174]), as to equipment with automatic coupling devices in such condition as to be operative, and its movement on such track by defendant, when so defective that it would not couple by impact, was a violation of such act.

[Ed. Note.—For other cases, see Commerce, Dec. Dig. § 27.*

Duty of railroad companies to furnish safe appliances, see note to 37 C. C. A. 8.]

**3. MASTER AND SERVANT (§§ 204, 228*)—FEDERAL EMPLOYER'S LIABILITY ACT —INJURY OF RAILROAD EMPLOYÉ—MOVEMENT OF DEFECTIVE CAR.**

Under the employer's liability act (Act April 22, 1908, c. 149, 35 Stat. 65 [U. S. Comp. St. Supp. 1909, p. 1172]), where a railroad company moved a car being used in interstate commerce having a coupler so defective that it would not couple automatically by impact, as required by Act March 2, 1893, c. 196, § 2, 27 Stat. 531 (U. S. Comp. St. 1901, p. 3174), and an employé, while attempting to remedy the defect in the performance of his duty, was caught between the cars and injured, the violation of the statute by the company was a contributing cause of the injury, which rendered it liable therefor; the questions of assumption of risk and contributory negligence being immaterial, under sections 3 and 4 of the act.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. §§ 204, 228.*]

**4. COMMERCE (§ 27*)—FEDERAL EMPLOYER'S LIABILITY ACT—SERVANT EMPLOYED IN INTERSTATE COMMERCE.**

An employé of a railroad company, charged with the duty of seeing to the coupling of the cars and of the air brake pipes upon cars standing upon a switch track to be transferred to another company, some of which cars were being used in interstate commerce,. was being employed in interstate commerce, and was within the provisions of the employer's liability act (Act April 22, 1908, c. 149, 35 Stat. 65 [U. S. Comp. St. Supp. 1909, p. 1172]).

[Ed. Note.—For other cases, see Commerce, Dec. Dig. § 27.*]

Sanborn, Circuit Judge, dissenting.

In Error to the Circuit Court of the United States for the District of Minnesota.

Action by Gust Johnson against the Great Northern Railway Company. Judgment for defendant, and plaintiff brings error. Reversed.

Humphrey Barton (John H. Kay, on the brief), for plaintiff in error. M. L. Countryman, for defendant in error.

Before SANBORN, Circuit Judge, and RINER and WM. H. MUNGER, District Judges.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

WM. H. MUNGER, District Judge. This action was to recover for injuries sustained by plaintiff while in the employ of the defendant. Plaintiff had been in the employ of defendant for about 2½ years as a car repairer, upon tracks in defendant's railroad yards in the city of Minneapolis, Minn.; such tracks having been set apart for repair work only. About five weeks prior to the injury complained of, plaintiff was sent to another one of defendant's yards in said city and assigned to the work of coupling up air hose, looking over brakes to see if they were all right, and to shop-mark any brake that was found broken. On the date of the injury an employé of defendant by the name of Burns, whose work was to couple up the air hose and make such light repairs as could be done upon the switching track, was unable to perform his work that day, and plaintiff was assigned and directed by the foreman to do Burns' work. The tracks upon which this work was done were not repair tracks, but were switching tracks; track 23 being a track upon which the cars were switched which were to be delivered to the Soo Railroad Company. The first work that plaintiff did on the day of the accident was to couple up the air in a string of about 40 cars standing upon said track 23. In going along the string of cars, coupling up the air, he came to a place where the cars were not coupled together. The knuckles of the couplers were open, but so close together that he was able to couple up the air hose. He noticed nothing wrong with the couplers at that time, and supposed they would couple when they came together. He went to another track, did some work, came back to track 23 to see if there had been more cars put on it, and then saw that the two cars before mentioned had not been coupled together, but had separated some, and the air hose had become uncoupled. He tried the lever on one of the cars to raise the pin, and it would not raise. He then went between the cars and found the lock pin down and slightly bent. He stepped out and looked to see if there was any engine about the track. Not noticing any, he stepped again in between the cars and tried to work the pin up with his hands, when the cars came together and caught and injured him. The cars came together by reason of other cars being kicked in on that track while he was endeavoring to work the pin out. In his petition he based his right to recover upon the grounds, first, that the car in question was used in interstate commerce, and was moved by defendant as an interstate commerce car, while it had a defective coupler, which would not couple to the adjoining car automatically by impact; and, second, in moving said car without giving any notice or warning to the plaintiff of the intention to move said car. At the close of the evidence, the court, over plaintiff's objection, directed a verdict for the defendant.

The real question in controversy is whether the facts stated bring the case within the act of Congress of date March 2, 1893 (27 Stat. 531, c. 196 [U. S. Comp. St. 1901, p. 3174]), known as the "Safety Appliance Act." The act in question imposed upon railroad companies engaged in interstate commerce the absolute duty of seeing that all cars engaged in such commerce, that were moved by it, should be, when so moved, equipped with a coupling device in such condition that

it would couple automatically by impact, and so constructed that it could be uncoupled from an adjoining car without the necessity of the party uncoupling going between the cars for such purpose. St. Louis & Iron Mountain Ry. Co. v. Taylor, 210 U. S. 281, 28 Sup. Ct. 616, 52 L. Ed. 1061; U. S. v. Atchison, T. & S. F. Ry. Co., 163 Fed. 517, 90 C. C. A. 327; Chicago Junction Ry. Co. v. King, 169 Fed. 372, 94 C. C. A. 652.

In St. Louis & Iron Mountain Ry. Co. v. Taylor, supra, it was said:

"In the case before us the liability of the defendant does not grow out of the common-law duty of master to servant. The Congress, not satisfied with the common-law duty and its resulting liability, has prescribed and defined the duty by statute. We have nothing to do but to ascertain and declare the meaning of a few simple words in which the duty is described. It is enacted that 'no cars, either loaded or unloaded, shall be used in interstate traffic which do not comply with the standard.' There is no escape from the meaning of these words. Explanation cannot clarify them, and ought not to be employed to confuse them or lessen their significance. The obvious purpose of the Legislature was to supplant the qualified duty of the common law with an absolute duty deemed by it more just, If the railroad does, in point of fact, use cars which do not comply with the standard, it violates the plain prohibitions of the law, and there arises from that violation the liability to make compensation to one who is injured by it. It is urged that this is a harsh construction. To this we reply that, if it be the true construction, its harshness is no concern of the courts. They have no duty except to enforce the law as it is written, unless it is clearly beyond the constitutional power of the lawmaking body."

The car in question, having the defective coupler, was a car belonging to the Wabash Railroad Company, and known and designated as a "foreign" car. It had been brought into Minneapolis, Minn., from the state of Wisconsin, by the Soo Railroad, delivered to the defendant loaded with coal, and by the defendant delivered to the consignee. It had been unloaded and placed upon track 23 for the purpose of being redelivered to the Soo Railroad. It was delivered to that railroad, and afterwards loaded with shingles in Minnesota, and taken by the Soo road thus loaded into Wisconsin on its return home. That it was at the time a car in use in interstate commerce is clearly sustained by the decision of the Supreme Court, in Johnson v. Southern Pacific Co., 196 U. S. 1, 25 Sup. Ct. 158, 49 L. Ed. 363, in which case it said:

"Whether cars are empty or loaded, the danger to employés is practically the same, and we agree with the observation of District Judge Shiras, in Voelker v. Railway Co. [C. C.] 116 Fed. 867, that 'it cannot be true that on the eastern trip the provisions of the act of Congress would be binding upon the company, because the cars were loaded, but would not be binding upon the return trip, because the cars are empty.' "

The use of the car in question, at the time of the injury, was a use in interstate commerce within the rule thus announced. It had been brought loaded from the state of Wisconsin into the state of Minnesota, and though empty at the time of the injury was being moved by the defendant on its return from whence it came. That the switching movement made at the time of the injury was a movement within the purview of the act of Congress is clearly established by the case of Voelker v. Chicago, M. & St. P. Ry. Co. (C. C.) 116 Fed. 867, and

same case, 129 Fed. 522, 65 C. C. A. 226, 70 L. R. A. 264. In that case the coupler had become defective, so that when the knuckle thereof was closed it was necessary for some one to go between the cars to open it, so as to prepare the coupler for the impact. Voelker was injured while in the performance of that act; the cars coming together by reason of other cars being moved onto the same track. The only difference in the facts between that case and this, which can be said to be at all material, is the fact that in that case Voelker was a brakeman, employed in the movement of the train; in this case, plaintiff, while not a brakeman, was engaged in the duty of seeing that the cars placed upon this track, and the air hose, were coupled. It is true that in addition to this duty he made light repairs, which could be done without the cars being placed upon the repair track. When injured he was not engaged in repairing the car, but was attempting to remove the bent pin so that the cars would couple by impact. He was performing practically the same thing which Voelker was performing in the case referred to.

The facts of this case are quite similar, also, to those of the case of Chicago Junction R. Company v. King, supra. In that case King was in the employ of defendant as a switchman in its yards, and while repairing a coupler was injured by the cars coming together. It was contended that the movement of the car was not such as was covered by the act; also that plaintiff, in doing the work of repairing a coupler, was not within the protection of the act, the coupler provisions being designed only for those who are engaged in the work of coupling and uncoupling cars. The Court of Appeals, in holding otherwise, said:

"But we find nothing in the statute that limits the classes of persons to whom carriers shall be responsible for damages that result directly and immediately from its illegal doings."

We think the proper construction of the act is applicable to all servants of the carrier who are injured while acting in the performance of their duty in and about the operation of the cars, where the proximate cause of the injury is the movement of a car in interstate commerce, with a defective coupler.

The prohibition against the defendant moving a car in interstate commerce not properly equipped with a coupler, which could be uncoupled without the necessity of a party going between the ends of the cars, being a positive one, the question as to whether or not defendant was negligent in moving the car, as measured by the common law of negligence in not giving warning to plaintiff of such movement, is wholly immaterial. Nor do we think any question of contributory negligence or assumed risk upon the part of plaintiff material in the determination of the case before us. Schlemmer v. Buffalo Rochester &c. Ry., 205 U. S. 1, 27 Sup. Ct. 407, 51 L. Ed. 681. By section 8 of the safety appliance act it is provided:

"That any employé of any such common carrier, who may be injured by any locomotive car or train in use contrary to the provisions of this act, shall not be deemed thereby to have assumed the risk thereby occasioned, although

continuing in the employment of such carrier after the unlawful us of such locomotive car had been brought to his knowledge."

Again, we think the facts bring the case within the provisions of Act Cong. April 22, 1908, c. 149, 35 Stat. 65 (U. S. Comp. St. Supp. 1909, p. 1172), known as the "Employer's Liability Act," as the defendant, in moving the car in question, was engaged in interstate commerce, plaintiff was employed by such carrier in said commerce, and the proximate cause of the injury was the defective condition of the coupling pin. By that act the question of contributory negligence, when applicable, is one of fact, to be submitted to the jury. The act also provides:

"That no employé, who may be injured or killed, shall be held to have been guilty of contributory negligence in any case where the violation by such common carrier of any statute enacted for the safety of employés, contributed to the injury or death of such employé."

Section 4 of that act provides:

"That in any action brought against any common carrier under and by virtue of any of the provisions of this act, to recover damages for injuries to. or the death of, any of its employés, such employé shall not be held to have assumed the risks of his employment in any case where the violation by such common carrier of any statute enacted for the safety of employés, contributed to the injury or death of such employé."

It is argued that the employer's liability act can have no application to the case, as plaintiff was not an employé engaged in interstate commerce. A part of his employment was to see to the coupling of the cars and the air hose upon the cars which were placed upon the transfer tracks. Some of those cars, among them the one in question, were engaged in interstate commerce. It is difficult to see why he was not an employé engaged in the movement of interstate commerce to as full an extent as a switchman engaged in the making up of trains in the railroad yards, as in the case of Chicago Junction R. Co. v. King, supra.

From a consideration of the whole case, we think the defendant a railroad company engaged in interstate commerce; that the car in question had upon it a coupler which was defective and did not comply with the act of Congress; that at the time plaintiff was injured the movement of the car was a movement by defendant in interstate commerce; that plaintiff was injured while a servant of defendant and in the performance of his duty, aiding in the movement of interstate commerce; that the movement of the car with the defective coupler was the proximate cause of plaintiff's injury; that plaintiff did not assume the risk of injury incident to the employment. Whether plaintiff was guilty of any negligence which contributed to the injury was, if applicable, a question for the jury.

The trial court, therefore, erred in directing a verdict for the defendant, and the case is reversed, with directions to grant a new trial.

SANBORN, Circuit Judge (dissenting). I am constrained to agree with the trial court in this case, because the evidence seems to me to prove clearly that the plaintiff was charged with and was engaged in

the specific duty of repairing the defective coupler which he had found. He was engaged in making a dangerous implement and place safe, and I am unable to assent to the proposition that the safety appliance acts charge the railroad companies with liabilities for every injury which those servants who know the defects in such appliances and are employed for the express purpose of remedying these defects may sustain while they are engaged in repairing them because the defects exist and need repairing.