### WHEELING TERMINAL RY. CO. v. RUSSELL.

(Circuit Court of Appeals, Fourth Circuit. December 8, 1913.)

No. 1,144.

1. EXCEPTIONS, BILL OF (§ 14*)—EVIDENCE—INCORPORATING STENOGRAPHER'S NOTES.

 Under Court of Appeals Rule 10, § 2 (193 Fed. vii, 112 C. C. A. vii), providing that only so much of the evidence shall be embraced in the bill of exceptions as may be necessary to present clearly the questions of law involved in the rulings to which exceptions are reserved, and that such evidence shall be set forth in condensed and narrative form,

---

save as a proper understanding of the questions presented may require that parts of it be set forth otherwise, a bill of exceptions consisting of a transcript of the reporter's notes is improper.

[Ed. Note.—For other cases, see Exceptions, Bill of, Cent. Dig. § 14; Dec. Dig. § 14.*]

**2. COMMERCE (§ 27*)—INJURIES TO SERVANT—SAFETY APPLIANCE ACT—INTERSTATE COMMERCE.**

Defendant had transported certain cars in interstate commerce which had been delivered to the consignees after being weighed, and, when unloaded, defendant sent to remove the cars, it being necessary that they should be again weighed to determine the net weight of the contents, and, while this service was in process, plaintiff, a member of the train crew, was injured by failure of the automatic couplers to couple by impact. *Held*, that plaintiff was engaged in interstate commerce at the time of his injury and was entitled to the protection of the Safety Appliance Act (Act March 2, 1893, c. 196, 27 Stat. 531 [U. S. Comp. St. 1901, p. 3174]).

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 25; Dec. Dig. § 27.*]

**3. MASTER AND SERVANT (§ 293*)—INJURIES TO SERVANT—INTERSTATE COMMERCE—SAFETY APPLIANCE ACT—INSTRUCTIONS.**

In an action for injuries to a trainman, while weighing certain interstate cars, by the failure of the automatic couplers to work properly, an instruction that plaintiff could not recover unless the jury found from a preponderance of the evidence that, at the time of the injury, the cars which he was assisting in coupling had either never been equipped with automatic couplers, or the couplers had become so broken, out of repair, and insufficient that they would not couple automatically by impact, and that such injury was directly caused either by a failure to so equip the cars or by the fact that the couplers were insufficient, was proper.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1148–1156, 1158–1160; Dec. Dig. § 293.*

Duty of railroad companies to furnish safe appliances, see note to Felton v. Bullard, 37 C. C. A. 8.]

**4. TRIAL (§ 253*)—REQUEST TO CHARGE—MISLEADING INSTRUCTIONS.**

In an action for injuries to a trainman by being crushed between certain cars which failed to couple automatically, a request to charge that if the jury found that, while plaintiff was engaged in weighing the cars, the knuckles of one of them was closed to aid plaintiff in weighing the cars, that the knuckle was still so closed at the time of the injury, and that the closing of the knuckle prevented the coupler from coupling automatically by impact and was the direct cause of the injury, they should find for defendant was properly refused as misleading, in ignoring defendant's own evidence that the couplers, when in good order, could be opened without going between the cars.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 613–623; Dec. Dig. § 253.*]

In Error to the District Court of the United States for the Northern District of West Virginia, at Wheeling; Alston G. Dayton, Judge.

Action by Samuel J. T. Russell against the Wheeling Terminal Railway Company. Judgment for plaintiff, and defendant brings error. Affirmed.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

J. B. Sommerville, of Wheeling, for plaintiff in error.

John J. P. O'Brien and John A. Howard, both of Wheeling, for defendant in error.

Before KNAPP and WOODS, Circuit Judges, and ROSE, District Judge.

ROSE, District Judge. [1] Section 2 of rule 10 of this court (193 Fed. vii, 112 C. C. A. vii) directs that:

"Only so much of the evidence shall be embraced in a bill of exceptions as may be necessary to present clearly the questions of law involved in the rulings to which exceptions are reserved and such evidence as is embraced therein shall be set forth in condensed and narrative form, save as a proper understanding of the questions presented may require that parts of it be set forth otherwise."

In this case the entire transcript of the stenographer's trial notes has been included in the bill of exceptions. No part of the evidence, no matter how formal or undisputed, has been reduced to narrative form. Every question and every answer is reproduced in full. Colloquies between counsel or with the court, statements that the jury retired from the court or returned to it, and such like matters are found in it, although in most, if not all, cases they have no bearing on any question which can be considered by us.

The rule which has been quoted above was adopted after full consideration. It is believed that compliance with it will not only save useless printing but will enable the court much more intelligently to pass upon the real issues involved. We know that counsel are usually busy. Some time may be saved by turning over the preparation of the bills of exception to stenographers and clerks. Such saving may not, after all, be worth what it costs. It is not impossible that some writs of error would not be sued out at all if counsel took the trouble to extract from the stenographer's notes the precise points upon which they must rely. In almost all cases such a preliminary analysis would make the work of brief making and of oral argument both easier and more effective. The court must require compliance with the rule.

[2] In the case at bar it will be well to designate the parties as they were in the trial court. That is, we will speak of the plaintiff in error here as the defendant; the defendant in error as the plaintiff.

The defendant is a West Virginia corporation. It is engaged in interstate commerce. It operates a switching or terminal railroad which extends from Martins Ferry, Ohio, to Benwood, W. Va. The plaintiff is a citizen of Ohio. He was employed by the defendant as a brakeman on freight trains. In the regular course of its business it had delivered to a consignee in West Virginia sundry loaded cars which had come from points outside of the latter state. These cars had been unloaded. The defendant sent a train to take them back. The plaintiff was one of the crew of such train. On the switch on which these cars were there were scales. The loaded cars had been weighed at the time of delivery. In order to determine the net weight of their contents, the cars had to be weighed after they had been emptied. Such weighing was habitually done by defendant's train crew. For this

purpose the engine backed one car after another upon the scales. The, last car on the train was the first to go upon them. When it was placed in position upon them it was uncoupled. The engine moved slightly forward. When the car had been weighed, the engine backed the next car down upon it so as to push or kick it off the scales and to put the other in its place. In order that it should not be reunited to the train before the next car had been weighed, the practice was to close the knuckle on either the forward coupler of the first car weighed or on the rear coupler of the car, next to it. Such closing of course prevented the automatic coupling which would otherwise have taken place. The process described was repeated until all the cars in the train, or as many of them as it was desired to weigh, had been weighed. The knuckles which had been closed were then reopened. The locomotive and tender, together with such cars, if any, as had not been uncoupled from them, were backed down upon the other cars. As they were pushed back one upon the other they coupled automatically by impact and the train was made up. On the occasion now in question, the train was composed of a locomotive and its tender, of three or four loaded cars placed next to the tender, and of six empty cars. The latter had been weighed. The process of recoupling had progressed to the point at which four of the empties had been recoupled. The train had been once or twice pushed down on the next to the last car. The latter moved along the track but did not couple. Plaintiff said he found the trouble was with the rear coupler on the third car from the end; that is, on the rear coupler of the last car which had up to that time been recoupled to the train. He tried to get the coupler to work by using the lever at the side of the car provided for the purpose. He did not succeed. He told the conductor not to move the train. He went between the cars which would not couple and began manipulating the coupler which had failed to work. He was so occupied for from three to five minutes, when he suddenly felt on his back the touch of the coupler on the forward end of the car immediately in his rear. From gravity, the slippery and soggy condition of the track, or from some other cause, the two rear cars had moved forward. Aided, as he supposes, by the circumstance that he was wearing a very greasy leather jacket, or perhaps because the movement of the detached cars came at that moment to an end, he managed to squeeze out without being cut in two and indeed without having his external skin broken at all. He was so injured that he had to be taken to a hospital. How serious, and how permanent these injuries were, were among the bitterly contested issues at the trial. Something has been said about them here, but we may not consider them. They were questions of fact which were necessarily for the jury, and its determination as to them may not be here reviewed.

Defendant claims that the Safety Appliance Act (Act March 2, 1893, c. 196, 27 Stat. 531 [U. S. Comp. St. 1901, p. 3174]) had no application because at the time plaintiff was injured he was not engaged in interstate commerce. No assignment of error was made as to any ruling of the court below on this question. Had there been, it could not have been sustained, and that for two reasons: First. The cars were being

weighed to determine the net weight of the interstate load carried by them to the West Virginia consignee. Those who were engaged in ascertaining such weights were themselves employed in that commerce. St. Louis & San Francisco Ry. Co. v. Seale, 229 U. S. 156, 33 Sup. Ct. 651, 57 L. Ed. 1129. Second. The cars had been employed in interstate commerce. It was not shown that they had been withdrawn from its service. The reasonable presumption, therefore, is that they remained in it. In practice such presumption will not work injustice. The defendant carrier will usually have little difficulty in showing, when it wishes to do so, where the cars were to be taken and for what purpose. For the plaintiff to trace them may be difficult and expensive.

Much of the argument of the able and zealous counsel for the defendant was directed to the circumstances under which an interstate carrier by rail became responsible for the failure of a coupler to couple automatically.

[3] The court below told the jury that they could not find for the plaintiff unless, by a preponderance of the evidence, they were satisfied that at the time of the injury the cars which he was assisting in coupling had either never been equipped with couplers coupling automatically by impact, or that the couplers on said cars had become so broken, out of repair, defective, or insufficient that they would not couple automatically by impact, and that said injury was directly caused either by the failure to so equip said cars or by the fact that the couplers on said cars had become so broken, out of repair, or insufficient that they would not couple automatically by impact. This instruction gave the defendant the benefit of all the law to which it was entitled. Johnson v. Southern Pacific Co., 196 U. S. 1, 25 Sup. Ct. 158, 49 L. Ed. 363; Chicago, Burlington & Quincy Ry. Co. v. United States, 220 U. S. 559, 31 Sup. Ct. 612, 55 L. Ed. 582; Delk v. St. Louis & San Francisco Ry. Co., 220 U. S. 580, 31 Sup. Ct. 617, 55 L. Ed. 590.

[4] The defendant complains that the court refused to instruct the jury to find for the defendant if they believed that:

"While the *defendant* was engaged in weighing said cars, the knuckles of one of them was closed to aid the *defendant* in weighing said cars, that said knuckle was still so closed at the time of said injury, and that said closing of said knuckle prevented the coupler of said car from coupling automatically by impact and was the direct cause of said injury."

Quite obviously this instruction, in the form in which it appears in the record, could not have been properly given. Doubtless, however, the word "defendant," where we have italicized it, was intended to be "plaintiff" and was so understood by court and counsel. Even so it was misleading. It ignored the evidence offered by the defendant itself· that, when the couplers were in order, they could be opened without going between the cars. The assignments of error to the rejection of testimony raise, although in a slightly different form, the questions already considered. We find no error in the rulings below concerning them.

Affirmed.