McADOO et al., Directors General of Railroads,
v. McCOY. (No. 1004.)

(Court of Civil Appeals of Texas. El Paso.
Oct. 23, 1919. Rehearing Denied
Nov. 13, 1919.)

1. APPEAL AND ERROR ⚖⇒215(1)—INSTRUC-
TIONS NOT REVIEWABLE UNLESS OBJECTED TO.

In view of Act 1913, c. 59, a party cannot
complain that court failed to submit an issue
raised by the pleadings and evidence, where no
objection was made to the court's charge.

2. MASTER AND SERVANT ⚖⇒228(2)—CONTRIB-
UTORY NEGLIGENCE NOT DEFENSE UNDER FED-
ERAL EMPLOYERS' LIABILITY ACT.

In an action based upon the Federal Em-
ployers' Liability Act (U. S. Comp. St. §§ 8657–
8665), in connection with the Federal Safety
Appliance Act (U. S. Comp. St. §§ 8605–8623),
contributory negligence on the part of the em-
ployé is not available as a defense, where a
violation of the Safety Appliance Act was the
concurring proximate cause of the death or in-
jury of such employé.

3. COMMERCE ⚖⇒27(7)—EMPLOYMENT IN "IN-
TERSTATE COMMERCE."

One engaged in the initial step of a switch-
ing operation, which would start cars upon their
return trip to a place in another state to be
again loaded, was engaged in interstate com-
merce, and the Federal Employers' Liability
Act (U. S. Comp. St. §§ 8657–8665) was appli-
cable, where he was injured while so engaged,
the cars in question being exclusively used for
the hauling of concentrates from the point in
the other state.

[Ed. Note.—For other definitions, see Words
and Phrases, First and Second Series, Interstate
Commerce.]

4. MASTER AND SERVANT ⚖⇒276(5)—DEFEC-
TIVE COUPLER PROXIMATE CAUSE OF DEATH.

In an action under the Federal Employers'
Liability Act (U. S. Comp. St. §§ 8657–8665)
and the Federal Safety Appliance Act (U. S.
Comp. St. §§ 8605–8623) evidence held to sus-
tain a finding that a defective coupler was the
proximate cause of injury.

5. DEATH ⚖⇒82—DAMAGES FOR CONSCIOUS
PAIN SUFFERED PRIOR TO DEATH.

Recovery can be had for conscious pain suf-
fered by deceased prior to his death, in an ac-
tion by his representative based both upon the
Federal Employers' Liability Act (U. S. Comp.
St. §§ 8657–8665) and the Safety Appliance Act
(U. S. Comp. St. §§ 8605–8623).

6. APPEAL AND ERROR ⚖⇒215(1)—OBJECTIONS
NOT MADE TO INSTRUCTIONS WAIVED.

An objection that an instruction was on the
weight of the evidence will not be considered on
appeal, where not urged on the trial.

7. DEATH ⚖⇒77—EVIDENCE SUFFICIENT TO
SHOW CONSCIOUS SUFFERING.

In an action under the Federal Employers'
Liability Act (U. S. Comp. St. §§ 8657–8665)

and the Federal Safety Appliance Act (U. S.
Comp. St. §§ 8605–8623) for death of a servant,
damages were properly awarded for conscious
suffering prior to death, where there was evi-
dence that deceased lived an hour or two after
being injured and was conscious and was suf-
fering.

8. MASTER AND SERVANT ⚖⇒204(2), 228(2)—
CONTRIBUTORY NEGLIGENCE AND ASSUMP-
TION OF RISK NO DEFENSES UNDER FEDERAL
STATUTES.

In an action under the Federal Employers'
Liability Act (U. S. Comp. St. §§ 8657–8665)
and the Safety Appliance Act (U. S. Comp. St.
§§ 8605–8623), testimony relating to contribu-
tory negligence and assumed risk on the part
of the deceased is properly excluded.

9. DEATH ⚖⇒99(4)—DAMAGES NOT EXCESSIVE.

Verdict for $20,000 in favor of widow and
two children for pecuniary loss occasioned by
death of husband and father, a railroad employé
held not excessive.

10. DEATH ⚖⇒99(2)—DAMAGES FOR CONSCIOUS
SUFFERING NOT EXCESSIVE.

A verdict of $2,500 held not excessive for
conscious suffering of one who lived several
hours after the injury.

11. APPEAL AND ERROR ⚖⇒1068(1)—INSTRUC-
TION AS TO APPORTIONMENT OF DAMAGES
HARMLESS ERROR.

Assuming that it was error, in an action
against the Director General of Railroads, to
instruct the jury to apportion damages for
death of an employé between a widow and chil-
dren of deceased, the defendant was not preju-
diced thereby, the verdict first finding and as-
sessing the damages and then apportioning them.

12. APPEAL AND ERROR ⚖⇒877(2)—OBJECTION
TO APPORTIONMENT OF DAMAGES.

Director General of Railroads cannot com-
plain, in an action against him for damages for
death of a railroad employé, that jury was per-
mitted to apportion the damages between the
widow and children of deceased in that such
apportionment infringed upon the jurisdiction
of the probate court, the fact that such jurisdic-
tion was infringed being of no concern to the
Director General of Railroads.

Appeal from District Court, El Paso Coun-
ty; Ballard Coldwell, Judge.

Suit by Neva M. McCoy, administratrix,
against W. G. McAdoo and his successor,
Walker D. Hines, Directors General of Rail-
roads. Judgment for plaintiff, and defend-
ants appeal. Affirmed.

Turney, Burges, Culwell, Holliday & Pol-
lard, of El Paso, for appellants.

Hudspeth, Wallace, Harper & Berkshire,
of El Paso, for appellee.

HIGGINS, J. Neva M. McCoy, the surviv-
ing wife of Buford McCoy, deceased, and ad-

⚖⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

ministratrix of his estate, brought this suit against the Atchison, Topeka & Santa Fé Railway Company, the Rio Grande, El Paso & Santa Fé Railroad Company, W. G. McAdoo and his successor, Walker D. Hines, Directors General of Railroads, to recover damages resulting from the death of Buford McCoy.

Upon trial a peremptory instruction was given to find in favor of the two railroad companies. Verdict was returned and judgment so rendered. As to the other defendants the issues were submitted to the jury and found in favor of the plaintiff, and damages assessed in the sum of $20,000 for pecuniary loss suffered by Mrs. McCoy and the two minor children of herself and deceased. The verdict apportioned $10,000 of the damages to Mrs. McCoy, and $5,000 to each of the children. The verdict assessed the further sum of $5,000 for the conscious pain and suffering endured prior to death by the deceased resulting from the injury. Judgment was rendered in conformity with the verdict. Later a remittitur of $2,500 was entered upon the item of $5,000 allowed for the pain and suffering of deceased. From this judgment the Directors General appeal.

### Opinion.

The court instructed the jury as follows:

"(3) You are instructed that it is unlawful for any common carrier to haul, or permit to be hauled or used on its line, any car used in moving interstate traffic not equipped with couplers coupling automatically by impact, and which can be uncoupled without the necessity of men going between the ends of the cars.

"Now, if you find from a preponderance of the evidence that on or about the time complained of in plaintiff's petition a car or cars, between which the deceased, Buford T. McCoy, was caught, was or were not equipped with couplers coupling automatically by impact, and you further find that the fact that such car or cars, if any, were not so equipped was a proximate cause of deceased's, Buford T. McCoy's, injury and death, you will find for the plaintiff against the defendants William G. McAdoo, Director General of Railroads, and Walker D. Hines, Director General of Railroads; and unless you so find, you will find for the defendants.

"(4) If you find that the cars between which the deceased, Buford T. McCoy, was caught, were at the time equipped with couplers coupling automatically by impact, you will find for the defendants."

In the first three propositions subjoined to the first assignment it is objected that the court erred in its charge in failing to submit the issue of contributory negligence on the part of the deceased, which was duly pleaded, and, as claimed by appellants, is raised by the evidence.

[1] No objection of this kind was made to the court's charge as required by the act of 1913 (chapter 59, p. 113). In this condition of the record any error of this kind in the court's charge presents no ground for reversal. Ry. Co. v. Dickey, 108 Tex. 126, 187 S. W. 184. But the contention raises a question underlying a number of the assignments, and for that reason it will be considered upon its merits.

[2] It is now well settled by the decisions of the Supreme Court of the United States that in actions based upon the Federal Employers' Liability Act (Act April 22, 1908, c. 149, 35 Stat. 65 (U. S. Comp. St. §§ 8657–8665), in connection with the Federal Safety Appliance Act (U. S. Comp. St. §§ 8605–8623), contributory negligence on the part of the employé is not available as a defense where a violation of the Safety Appliance Act was a concurring proximate cause of the death or injury of such employé. Ry. Co. v. Campbell, 241 U. S. 497, 36 Sup. Ct. 683, 60 L. Ed. 1125; Ry. Co. v. Wagner, 241 U. S. 478, 36 Sup. Ct. 626, 60 L. Ed. 1110. Appellants do not question the correctness of this rule, but assert that Mrs. McCoy does not base her right of action upon the Federal Employers' Liability Act, but rests it solely upon the Safety Appliance Act. The petition alleges that the defendants were interstate carriers by railroad; that at the time of his injury the deceased was engaged as a switch foreman, handling cars moving in interstate commerce; that the cars were not equipped with couplers coupling automaticallly by impact; that, they having failed to automatically couple by impact, the deceased went in between them to inspect the couplers and repair same, and while there the head cut of cars rolled down towards the other car, and he was caught between them and so injured that his death resulted. The foregoing is the substance of the allegations of the petition pertinent to the question considered, and they are regarded as stating a cause of action based upon the Federal Employers' Liability and Safety Appliance Acts. The allegations exclude the idea that the cause of action is in any wise predicated upon the statutes of Texas. The evidence by the plaintiff disclosed that at the time of his injury deceased was acting as a switch foreman, and with another switchman, C. G. Davis, was handling six cars at the smelter near El Paso. A switch engine was also engaged. Five of the cars were Santa Fé cars (called Chino cars), and the other a coal car. The Chino cars were special service cars, and used exclusively in hauling concentrates from the plant of the Chino Copper Company at Hurley, N. M., to the smelting plant where the injury occurred. They came from Hurley to El Paso over the Atchison, Topeka & Santa Fé Railway Company and the Rio Grande, El Paso & Santa Fé Railroad, and are then

switched to the smelter. The coal car came from Oro Grande, N. M., to El Paso, over the El Paso & Southwestern, and was there 'delivered to the Rio Grande, El Paso & Santa Fé, and thence taken to the smelter. These cars came to the smelter loaded and were weighed. After unloading they were again weighed to determine the load thereof. At the time of the accident the weighing operation of the empty cars had just been completed, one car at a time having been pushed upon the scales and weighed. The five Chino cars were coupled together. The coal car was attached to the engine. All that remained to be done was to make the coupling between the five Chino cars and the coal car, couple up the air, get other cars at the smelter, and go to town (El Paso). Three attempts were made by Davis to couple the coal car to the five Chino cars, and they failed to couple automatically by impact, and there is the testimony of Davis and the witness Carl that the coupling appliance on the coal car was worn and defective. The third attempt to couple automatically by impact having failed, McCoy told Davis that he would make the coupling, and instructed Davis to go and couple up the air, the braking power, on the five cars. Davis started to the five cars, and McCoy went in between the string of five cars and the coal car. At the time he went in the cars were separated a short distance and all were stationary. Davis testified that just as he turned the angle cock on the rear of the five cars they began moving forward towards the engine. This movement was unexpected and was apparently due to gravity. The movement caught McCoy between the cars, and injured him so severely that he died shortly thereafter. The record is silent as to the purpose for which the coal car was to be used after it was returned from the smelter to the yards in El Paso, but as to the five Chino cars it is shown by the testimony of the witness Carl that they were used exclusively in hauling concentrates from Hurley, N. M., to the El Paso Smelting Works; that they came from Hurley to El Paso over the lines of the two railway companies, and are then switched to the smelter. The witness Davis testified concerning the use of the Chino cars to substantially the same effect, and further as follows:

"I don't know how long those cars had been in El Paso, and I don't know where they came from to El Paso, not direct. Of course, you understand, when I spoke of the Chino cars, we know what is in them, and we get accustomed to where they go. No, sir; it is no part of my duty to find out that; we are instructed. These were empties we were handling at that time. No, sir; I don't know of my own knowledge when they expected to leave El Paso or where they were going, except, as I said before, about the Chino cars. I know this, we can tell

by the cars as to where to put them; we know where to put the cars in the train, and we know where they go to. No; I wasn't doing that on this occasion; it was up to us just to bring them to El Paso. Another crew handles them in the yard here, and I wasn't a member of that crew."

There is nothing in the record to impeach the testimony of Carl and Davis concerning the use of the Chino cars.

[3] Now, upon the facts stated, was the deceased, at the time of his injury, engaged in interstate commerce so as to render applicable the Federal Employers' Liability Act? This, we think, must be answered in the affirmative.

In the handling of cars containing freight from one state to another, employés of railroad companies are frequently required to ascertain the weight of contents at the time of the final delivery. This is done by weighing the car while loaded, and again after being emptied.

It has been held that employés engaged in such work are within the federal act if the cars so weighed contained traffic moving from one state to another. Ry. Co. v. Russell, 209 Fed. 795, 126 C. C. A. 519. Appellee invokes this rule, but it is not regarded as applicable, because it is apparent from the testimony of Davis that the weighing of the cars had been completed at the time of the accident, and they were in the act of coupling the six cars when they would pick up the other cars at the smelter and switch them all to the El Paso yards. In other words, they were engaged in the initial act of a 'switching operation of these and other cars at the smelter back to the El Paso yards.

"The ordinary and usual test in determining whether switching crews employed in railroad yards are engaged in interstate commerce is whether at the very moment of the accident they are assisting in moving interstate traffic; that is, cars, either loaded or empty, originating in one state and destined to a point in another state, territory, or foreign country."

This is the rule stated by Mr. Roberts in his work on Federal Liabilities of Carriers (volume 1, § 503), and is supported by the decisions of the national Supreme Court there cited. At sections 510 and 511 the same author says:

"A car loaded with freight, being moved from one state to another, continues to be used in interstate commerce until it is delivered by a common carrier to the consignee and unloaded. Its interstate character then ordinarily ceases. It does not acquire a new status as an interstate commerce car until it is again assigned or used by the carrier for the purpose of moving traffic in interstate commerce. A movement of the car, therefore, in a terminal yard, from one

track to another, after the conclusion of its interstate status, during the first trip and before it is assigned or used in interstate commerce on the second trip, is local in character; that is, intrastate. An employé injured while handling the car in the interim between the two trips has no remedy under the Federal Employers' Liability Act. For example, a car, after an interstate cargo had been discharged from it, was taken to another point in the same state, where it was left to await another order for its future movement. Such an order was given two or three hours after an accident to an employé. The court held that the plaintiff was not engaged in interstate commerce.

"511. *Exceptions to Rule that Delivery of Car at Destination Ends Its Interstate Status.* But while it is true, as stated in the foregoing paragraph, that the interstate character of a car ordinarily ceases when it is delivered at the destination point to the consignee and unloaded, nevertheless where it is intended that the car, after being unloaded, shall be returned by the carrier to the initial point in another state, its interstate status continues during the entire trip."

In Johnson v. Ry. Co., 178 Fed. 643, 102 C. C. A. 89, the court said:

"The car in question, having the defective coupler, was a car belonging to the Wabash Railroad Company, and known and designated as a 'foreign' car. It had been brought into Minneapolis, Minn., from the state of Wisconsin, by the Soo Railroad, delivered to the defendant loaded with coal, and by the defendant delivered to the consignee. It had been unloaded and placed upon track 23 for the purpose of being redelivered to the Soo Railroad. It was delivered to that railroad, and afterwards loaded with shingles in Minnesota, and taken by the Soo road, thus loaded, into Wisconsin on its return home. That it was at the time a car in use in interstate commerce is clearly sustained by the decision of the Supreme Court in Johnson v. Southern Pacific Co., 196 U. S. 1, 25 Sup. Ct. 158, 49 L. Ed. 363, in which case it said:

" 'Whether cars are empty or loaded, the danger to employés is practically the same; and we agree with the observation of District Judge Shiras in Voelker v. Railway Co. (C. C.) 116 Fed. 867, that it cannot be true that on the eastern trip the provisions of the act of Congress would be binding upon the company, because the cars were loaded, but would not be binding upon the return trip, because the cars are empty.' "

"The use of the car in question, at the time of the injury, was a use in interstate commerce within the rule thus announced. It had been brought loaded from the state of Wisconsin into the state of Minnesota, and, though empty at the time of the injury, was being moved by the defendant on its return from whence it came. That the switching movement made at the time of the injury was a movement within the purview of the act of Congress is clearly established by the case of Voelker v. Chicago, M. & St. P. Ry. Co. (C. C.) 116 Fed. 867, and same case, 129 Fed. 522, 65 C. C. A. 226, 70 L. R. A. 264."

In Trowbridge v. Ry. Co., 192 Mo. App. 52, 179 S. W. 777, it was said:

"However, in the case now before us plaintiff's injury occurred after the car had been unloaded, and while he was switching it preparatory to taking it back to Dodson, where it could be taken possession of by the Missouri Pacific. Was the movement of this empty car a part of interstate commerce? We are of the opinion that it was, under the circumstances disclosed by this case. In the first place, the service undertaken by the defendant when it received the loaded car from the Missouri Pacific at Dodson was not finished until it had transported the car to its consignee, and had returned it empty to Dodson, and placed it again at the disposal of the Missouri Pacific. Under these circumstances the particular trip of this car from Buffville, Kan., might be said not to have ended until it was returned empty to Dodson, since it was not the purpose of any one that the car, when unloaded, should remain at the point of delivery to the consignee. The return of the car to Dodson was a necessary part of the movement of any cars carrying commerce from the state of Kansas to points in Missouri on defendant's line. To enable the railroad, bringing freight from Kansas to such points, to continue that commerce, certainly the cars, after they have been received and emptied of their goods, must be returned to that road. However, there is more in the facts of this case than simply the return of the car to Dodson, and we need not go so far as to hold that its mere return to Dodson was a part of its incoming trip, and therefore a part of the interstate commerce of that trip. In this case the Missouri Pacific Road had directed that all box cars returned to Dodson should be sent to its distribution point at Osawatomie, Kan., for use in the transportation of wheat. The car in question was not one belonging to the Missouri Pacific, but belonged to the Delaware, Lackawanna & Western Railway (an eastern railroad). When the car was unloaded at the Coen Building Material Company's plant, and started by defendant to Dodson, the defendant was in fact participating in its return to Kansas, where it was to again enter the stream of incoming cars used in further transportation. This westward movement was merely a completion of the circuit it was making in the transportation of the country commerce. On its return empty from the switch of its consignee, its passage through Dodson to the west was accomplished in the same way it went through Dodson east to its consignee. Dodson was no more its final destination in the one case than in the other. The fact that the defendant took no interest in where the car was going the moment it reached Dodson, nor made any inquiry in regard thereto, ought not to make any difference in the real nature of the service then being rendered. It was then performing a service in the interstate commerce of the country. And in view of the fact that Dodson was so near the Kansas line with only one small station between it and that state, it is difficult to believe that defendant was wholly ignorant of the fact that it was helping in the interstate movement of such cars, even though its officers were careful to avoid ascertaining to what particular point in Kansas

the cars were being sent. It is not the intent with which the carrier performs its work that affects the nature of the carriage; it is the service that is actually rendered. This is what determines whether it is inter or intra state. The empty car, having brought its load from Kansas into Missouri, had entered upon its return to that state, there to be again loaded. It was an instrumentality of interstate commerce. * * *"

In Johnson v. Ry. Co., 196 U. S. 1, 25 Sup. Ct. 158, 49 L. Ed. 363, Chief Justice Fuller said:

"Another ground on which the decision of the Circuit Court of Appeals was rested remains to be noticed. That court held by a majority that, as the dining car was empty and had not actually entered upon its trip, it was not used in moving interstate traffic, and hence was not within the act. The dining car had been constantly used for several years to furnish meals to passengers between San Francisco and Ogden, and for no other purpose. On the day of the accident the east-bound train was so late that it was found that the car could not reach Ogden in time to return on the next west-bound train according to intention, and it was therefore dropped off at Promontory, to be picked up by that train as it came along that evening. The presumption is that it was stocked for the return, and as it was not a new car, or a car just from the repair shop, on its way to its field of labor, it was not 'an empty,' as that term is sometimes used. Besides, whether cars are empty or loaded, the danger to employés is practically the same, and we agree with the observation of District Judge Shiras in Voelker v. Chicago, M. & St. P. R. Co. [C. C.] 116 Fed. 867, that 'it cannot be true that on the eastern trip the provisions of the act of Congress would be binding upon the company, because the cars were loaded, but would not be binding upon the return trip, because the cars are empty.'

"Counsel urges that the character of the dining car at the time and place of the injury was local only, and could not be changed until the car was actually engaged in interstate movement, or being put into a train for such use; and Coe v. Errol, 116 U. S. 517, 29 L. Ed. 715, 6 Sup. Ct. 475, is cited as supporting that contention. In Coe v. Errol it was held that certain logs cut in New Hampshire, and hauled to a river in order that they might be transported to Maine, were subject to taxation in the former state before transportation had begun. The distinction between merchandise which may become an article of interstate commerce or may not and an instrument regularly used in moving interstate commerce, which has stopped temporarily in making its trip between two points in different states, renders this and like cases inapplicable.

"Confessedly this dining car was under the control of Congress while in the act of making its interstate journey, and in our judgment it was equally so when waiting for the train to be made up for the next trip. It was being regularly used in the movement of interstate traffic, and so within the law."

Under the facts above stated, it thus appears that at the time of his injury the deceased was engaged in the initial step of a switching operation which would start the five Chino cars upon their return trip to Hurley, N. M., in the service to which they were exclusively dedicated, as shown by the evidence, namely, hauling concentrates of the Chino Copper Company at Hurley, N. M., to the El Paso Smelting Works at El Paso, and, under the cited cases, deceased was engaged at the time of his injury in interstate commerce and protected by the federal act. This being true, there was no issue in respect to contributory negligence to be submitted to the jury; for in cases arising under the Liability Act no employé engaged in interstate commerce, and injured through a violation of the Safety Appliance Act, shall be deemed guilty of contributory negligence. Ry. Co. v. Campbell, 241 U. S. 498, 36 Sup. Ct. 683, 60 L. Ed. 1125; Ry. Co. v. Wagner, 241 U. S. 478, 36 Sup. Ct. 626, 60 L. Ed. 1110. The Schlemmer Case, 220 U. S. 590, 31 Sup. Ct. 561, 55 L. Ed. 596, cited by appellant, is not in point. Schlemmer was injured prior to the amendment of the law eliminating the defense of contributory negligence of an employé under the circumstances here shown.

[4] Under the first assignment it is further contended that under the evidence it does not appear that the defective coupler was the proximate cause of the injury, and that the court erred in submitting the condition of the coupler as the proximate cause of the injury. The second and third assignments raise the same question. Under the evidence it is very clear the deceased would not have assumed the position between the cars which resulted in his injury if they had been equipped with couplers which automatically coupled by impact. Under the authorities, the court properly submitted the issue of a defective coupler as a proximate cause of the injury. See Wagner and Campbell Cases, supra; also Erie Ry. Co. v. Russell, 183 Fed. 725, 106 C. C. A. 160; Freeman v. Swan, 143 S. W. 725; Atlantic City Ry. Co. v. Parker, 242 U. S. 56, 37 Sup. Ct. 69, 61 L. Ed. 154; Johnson v. Great Northern Ry., 178 Fed. 644, 102 C. C. A. 89; Donegan v. Ry. Co., 165 Fed. 869, 91 C. C. A. 555.

[5] Under the fourth assignment complaint is made of the court's charge in authorizing a recovery for conscious pain suffered by the deceased prior to his death. This contention is predicated upon the theory that appellee based her cause of action solely upon the Safety Appliance Act, which does not authorize recovery of such damages. This is disposed of by our holding that the cause of action is based upon both the Federal Employers' Liability and Safety Appliance Acts. See Ry. Co. v. Craft, 237 U. S. 648, 35 Sup. Ct. 704, 59 L. Ed. 1161.

[6, 7] It is further objected to that portion of the court's charge allowing recovery for conscious pain suffered by the deceased that it was upon the weight of the evidence and was without evidence to warrant submission of such issue. As to its being upon the weight of the evidence, no such objection was urged upon the trial, and is therefore waived. Dickey Case, supra. As to there being no evidence of such pain, it appears the deceased lived an hour or two after being injured, and was conscious, and there is the testimony of Crockett and the father of the deceased that during this time he was suffering.

[8] The fifth, sixth, eighth, ninth, and tenth assignments relate to rulings upon evidence, and in our opinion present no reversible error. The testimony of O'Neil and Davis, the exclusion of which is made the basis of the eighth and ninth assignments, was properly excluded because it related only to contributory negligence and assumed risk on the part of the deceased, and under sections 3 and 4 of the Employers' Liability Act these defenses are eliminated where the death of the employé is caused by a violation of the Safety Appliance Act.

The seventh assignment is disposed of by the ruling heretofore made.

[9, 10] The eleventh assignment complains that the verdict is excessive; the thirteenth, of remarks made by counsel for appellee in his argument to the jury. We regard the same as without merit.

The sixth paragraph of the court's charge is as follows:

"If you find for the plaintiff you will allow such sum, if paid now, as would be a fair and just compensation for the pecuniary loss, if any, resulting to Mrs. Neva M. McCoy and her minor children from the death of her husband. You will not, in estimating the damages, if any, consider the bereavement, mental anguish, grief, or pain suffered by them on account of the death of the said Buford T. McCoy. The damages are for pecuniary loss, not a solace; however, if you find from a preponderance of the evidence that, prior to the death of the said Buford T. McCoy, he endured conscious suffering, you may allow as damages such sum as you find, from a preponderance of the evidence, would be a fair and reasonable compensation for the conscious pain so suffered by said Buford T. McCoy prior to his death. If you should find for the plaintiff on either or both of the elements of damages submitted in this paragraph, you will indicate in your verdict the amount allowed for such respective elements of damages.

"If you find for the plaintiff any damages for the pecuniary loss, if any, suffered by Mrs. Neva M. McCoy and her children, you will apportion such damages which you may assess, if any, between the mother, Neva M. McCoy, Amina McCoy, and Fay McCoy."

[11, 12] It is objected to this instruction that it was erroneous to direct an apportionment of the damages assessed as between the surviving wife and children because under the federal law there was no warrant for such apportionment, and a general verdict and judgment only in favor of the administratrix could be had, leaving to the probate court the apportionment and distribution of the fund recovered and collected by such administratrix. In Ry. Co. v. McGinnis, 228 U. S. 173, 33 Sup. Ct. 426, 57 L. Ed. 785, in a suit under the Employers' Liability Act, Justice Lurton said:

"The statutory action of an administrator is not for the equal benefit of each of the surviving relatives for whose benefit the suit is brought. Though the judgment may be for a gross amount, the interest of each beneficiary must be measured by his or her individual pecuniary loss. That apportionment is for the jury to return. This will, of course, exclude any recovery in behalf of such as show no pecuniary loss."

In the latter case of Ry. Co. v. White, Admn'x, 238 U. S. 507, 35 Sup. Ct. 865, 59 L. Ed. 1433, Ann. Cas. 1916B, 252, it was held that a general verdict for the plaintiff might be returned in an action of this nature for the benefit of the widow and minor children of the deceased employé, without apportioning the damages between the beneficiaries. From the reasoning of Justice Lamar in the White Case it would seem improper for the jury to make such apportionment, thus conflicting with the holding in the McGinnis Case.

In Ry. Co. v. Kelly, 241 U. S. 485, 36 Sup. Ct. 630, 60 L. Ed. 1117, L. R. A. 1917F, 367, there was an apportionment of the damages recovered. The judgment in that case was reversed, but upon other grounds, no question apparently being made with respect to the right of the jury to make the apportionment.

In volume 2, Robert's Federal Liabilities of Carriers, § 638, it is said:

"In all actions under the Federal Employers' Liability Act, where there are several beneficiaries, the damages due each of them may be separately stated in the verdict, the apportionment being for the jury to return."

In support of the text the author cites a number of authorities. In view of the apparently conflicting holdings in the McGinnis and White Cases, this court is in doubt as to the correct practice with respect to the question, but upon the facts presented here we are of the opinion that, upon any view of the matter, the appellant has not been injured, and therefore no reversible error is shown. The court's charge upon this phase is quoted above. The verdict returned is as follows:

"We, the jury in the above styled and numbered cause, find for the plaintiff, Neva M. McCoy, administratrix, against the defendants William G. McAdoo, Director General of Railroads, and Walker D. Hines, Director General of Railroads, and assess damages in the sum of $20,000.00 dollars for pecuniary loss suffered by Neva M. McCoy, Amina McCoy, and Fay McCoy; and we apportion said damages as follows: To Neva M. McCoy, $10,000.00; to Amina McCoy $5,000.00 dollars; to Fay McCoy, $5,000.00 dollars; and we further assess damages for conscious pain and suffering in the sum of $5,000.00 dollars.

"We further find for the defendant Atchison, Topeka & Santa Fé Railway Company, and we further find for the defendant Rio Grande, El Paso & Santa Fé Railroad Company."

Judgment was rendered that—

"Neva M. McCoy, temporary administratrix and personal representative of the estate of Buford T. McCoy, deceased, do have and recover of and from defendants W. G. McAdoo, Director General of Railroads, and Walker D. Hines, Director General of Railroads, and the director general of railroads and each of them, jointly and severally, the sum of twenty-five thousand ($25,000.00) dollars, which $25,000.00 shall be, and hereby is, apportioned as follows: To Neva M. McCoy the sum of ten thousand ($10,000.00) dollars; to Fay McCoy, a minor, five thousand ($5,000.00) dollars; and to Amina McCoy, a minor, the sum of five thousand ($5,000.00) dollars; and to Neva M. McCoy in her official capacity as temporary administratrix and personal representative of the estate of Buford T. McCoy, deceased, the sum of five thousand ($5,000.00) dollars, for the conscious suffering of deceased, Buford T. McCoy, resulting from the injuries suffered before his death. Said sum of twenty-five thousand dollars ($25,000.00) shall bear interest from this date at the rate of six per cent. per annum until paid."

It will be observed that as to the item of $20,000 the verdict is general, and that this is in accordance with the court's charge. This $20,000 is then apportioned by the further finding and judgment. The jury having found and assessed $20,000 for the pecuniary loss suffered by the wife and children, and the judgment following this finding, we do not see how the appellant could have been injured by the apportionment or by the instruction of the court to make such apportionment. It is fully protected against another suit, and if in fact the apportionment infringes upon the jurisdiction of the probate court it is a matter which does not concern appellant. It is not thereby injured. Upon the authorities, we believe that upon no view can it be considered reversible error. Ry. Co. v. White, supra; Ry. Co. v. Reed, 211 Fed. 111, 128 C. C. A. 39; Ry. Co. v. Lehman, 72 S. W. 619; Ry. Co. v. Stevens, 97 Va. 631, 34 S. E. 525, 46 L. R. A. 367.

The judgment is affirmed.